## M. MORRIS *v.* SHRYOCK & ROWLAND.

1. ATTACHMENT — JUSTICE OF THE PEACE — JURISDICTION. — Where M. sued out two attachments against S. & Co., on two promissory notes, one for $112.70, and the other for $139.28, making the sum of $251.98: *held*, that the plaintiff could not divide his claim so as to bring it within the jurisdiction of a justice of the peace, and that the justice of the peace had no jurisdiction of the case. Such a division of a claim is prohibited by the law, in order to prevent a multiplicity of suits and unnecessary accumulation of costs. Const., art. 6, section 23; Grayson v. Williams, Walker, 298; Scofield v. Pensons, 4 Cushman, 402.

2. SAME — CIRCUIT COURT — CERTIORARI. — When a cause is brought by *certiorari* from a justice's court, to the circuit court, the court shall be confined to the examination of questions of law arising or appearing on the face of the record and proceedings, and in case of affirmance of the judgment of the justice, the same judgment shall be given as on appeals. In case of a reversal, the circuit court shall enter up such judgment as the justice ought to have entered, if the same is apparent, or may then proceed to try the cause anew on its merits. Rev. Code, 1871, § 1336.

3. SAME — NEW TRIAL BY JUSTICE'S COURT. — Where the attachment is sued out and levied, and a third party claims the goods, and tenders an issue, and upon that issue the jury found for the defendant, and the justice of the peace sets aside the verdict and grants a new trial: *held*, that the justice had no power to set aside the verdict and grant a new trial; and even if that court possessed such power, it is not such a judgment as could be removed to the circuit court by appeal or *certiorari*, being only an interlocutory order in the progress of the cause. Where there is a verdict in a justice's court, in a case in which he has jurisdiction, it is his duty to enter judgment on such verdict, and his action in setting aside the verdict and granting a new trial is simply void, and could furnish no

grounds for carrying the case to the circuit court, and the circuit court would have no power to retain the suit and try it.

4. Same — Attachment — Stoppage in Transitu. — What effect has the levy of an attachment upon the rights of the defendants in error, as vendors, to stop the goods *in transitu?* The right of stoppage *in transitu,* though first introduced and founded in equity, has long been considered and acted upon as a legal remedy. The justice of the right is admitted and recognized in constant practice, as an extension of the lien which the vendor has for the recovery of possession of the goods, as a legal possessory remedy.

5. Same — Same — Case in Judgment. — The attachment at the suit of M. against S. & Co., was levied on goods on the wharf boat, which had been purchased on credit by S. & Co. of Shryock & Rowland of St. Louis, who shipped the goods to S. & Co., but before S. & Co. obtained possession the attachment was levied, after which S. & R. set up their claim to the goods, under their right of stoppage *in transitu.* Under these circumstances, the actual shipment of the goods to the vendees by their order, constituted a good contract of sale, and a good constructive delivery so as to vest the property in the goods in the vendees, and place them at their risk, yet it was subject to the right of the vendors to stop the goods *in transitu,* in case the vendees became insolvent, this right may be exercised at any time before the goods come into the actual possession of the vendees.

Error to the Circuit Court of Washington County. Hon. C. C. Shackleford, Judge.

The facts in this case appear sufficiently in the opinion of the court.

*F. & L. B. Valliant,* for plaintiff in error:

It was error to quash the *certiorari,* and the circuit court had no jurisdiction of the case. There was no *final judgment* in the justice's court, the case was still in his court undetermined, and the circuit court could not oust the justice of his jurisdiction. See Rev. Code, 1871, § 1336. No trial was had as to the claim of. Shryock & Rowland, until it reached the circuit court, nor does it appear that an issue was joined. If it was error to grant the new trial, and if the justice's court had proceeded to the final trial of the case and given final judgment, from which an appeal had been

taken, the circuit court could then have corrected the error, as it would have then had jurisdiction of the case, and might have set aside the new trial, and have affirmed the first judgment, on the ground that the new trial was granted improperly.   Prewett v. Coopwood, 30 Miss., 369 ; Frizell v. White, 27 Miss., 198.

The *certiorari* can only be granted upon a petition showing good cause, and then the court is confined to questions of law. Rev. Code, 1871, § 1336.

It was error in the circuit court to try the claim of Shryock & Rowland to the property attached as an original trial, there having been no trial on this issue in the justice's court.

We take the following to be the principal facts in the case:   V. L. Sanders & Co., merchants at Greenville, sent an order on Shryock & Rowland, merchants at St. Louis, for a lot of goods to be shipped and sold to Sanders & Co., on a credit; the goods were sent and received on the wharf boat.  Accordingly Shryock & Rowland drew on Sanders & Co., at 30 and 60 days, and sent the bills to Worthington, Buckner & Co., bankers at Greenville, for collection.   Whilst on the wharf boat the goods were attached.  Under this state of facts, the instructions were erroneous.

*W. L. Nugent,* for defendant in error :

1. There was an error in granting the writ of *certiorari.*   The point involved was one of law purely.   The singular freak of the magistrate in granting a new trial is not countenanced by any law, and certainly there is no rule of public policy that would justify one man to sit in judgment upon the verdict of six having equal ability, and a greater disposition to hold the scales of justice evenly balanced.   The whole proceeding after the verdict of the jury was *coram non judice.*   If the plaintiff in attachment desired any further litigation, he should have taken an appeal.   Rev. Code, 1871, § 1362.

2. The circuit court should have dismissed the whole proceeding in both courts for the transparent cheat attempted by bringing the two suits in an inferior court, which clearly did not have

jurisdiction, the plaintiff having but one demand in point of law, even though he held two notes. It was not error to consolidate the two suits; this should have been done by the magistrate, and the suit dismissed for want of jurisdiction.

3. The claimants were entitled to the goods, the right of stoppage *in transitu* being intact. The contract of sale was not absolute, but voidable and relievable, both at law and in equity. Martin v. McCormick, 4 Sandf., (N. Y.), 366; Ketchum v. Catlin, 21 Vt., 191; Wood v. Scarth, 1 Foster & Fin., 293; Luce v. Izod, 25 L. J. Eq., ch. 307; Milnes v. Duncan, 6 Barn. & Cress., 671; Kelly v. Solari, 9 Mees & W., 54; Gratz v. Redd, 4 B. Mon., 178. It was competent for the vendors to protect themselves by refusing to deliver the goods, the vendee after the purchase having become insolvent. Hunter v. Talbott, 3 S. & M., 761; 2 Kent's Com., 493. The condition precedent to the contract of sale and delivery was, the acceptance of the bills drawn by the vendor upon the vendee, and until the bills were *accepted*, the *property* did not vest in the vendee even on delivery, and the right continued in the vendor even against the creditors of the vendee. Payne v. Shadbolt, 1 Camp., 427; Carleton v. Sumner, 4 Pick., 516; Smith v. Dennie, 6 Pick., 262; Fleeman v. McKean, 25 Barb., 474; Lord Seaforth's case, 19 Vesey, 235; Russel v. Miner, 22 Wend., 661; Sargent v. Metcalf, 5 Gray, 306; Corlies v. Gardner, 2 Hall, 345.

PEYTON, C. J., delivered the opinion of the court.

The material facts of this case, as presented by this record, are, that V. L. Sanders & Co., a mercantile firm, located and doing business in the town of Greenville, in the county of Washington, in this state, were indebted to one M. Morris, in the sum of $251.98, as evidenced by their two promissory notes, one dated January 15, 1873, for $112.70, payable thirty days after date, the other, dated 1st of February, 1873, for $139.28, and payable thirty days after date.

On the 5th day of March, 1873, the said M. Morris sued out

38

before one J. L. Griffin, a justice of the peace of said county of Washington, two several writs of attachment on said notes against the estate of M. R. Sanders, as surviving partner of the said firm of V. L. Sanders & Co., returnable into said justice's court, which were levied by the sheriff of said county on the same day on thirty packages of goods, wares and merchandise on the wharf-boat at the said town of Greenville, as the property of the said M. R. Sanders as surviving partner as aforesaid. And the officer levying said attachments, being of opinion that the goods and chattels levied on are perishable property, and in danger of immediate waste and decay, sold the same for the sum of $296.70, of which sum, after paying freight, charges and sheriff's fees, he holds in his hands the sum of $242.75, subject to the order of the court.

Upon issues joined on pleas in abatement, filed by the defendant in the attachments, traversing the truth of the alleged causes for which said attachments were sued out, the jury found the issues for the defendant, and that the attachments were wrongfully sued out, and assessed his damages, by reason thereof, at $253.90. Whereupon the plaintiff moved the court for a new trial, which motion was sustained by the justice of the peace and a new trial granted. From this ruling of the court in granting a new trial the defendant in attachments brings the cases to the circuit court of said county, on the 7th day of March, 1873, by writ of certiorari.

And on the 8th day of March, 1873, the defendants in error, Shryock and Rowland, merchants of St. Louis, Missouri, interposed a claim to the property on which said attachments were levied, and their claim was sustained by the jury at the next December term of said circuit court, and judgment rendered in their favor for the possession of said property. And from this judgment the plaintiff below prosecutes this writ of error.

The main questions presented by this record for our consideration in disposing of this case are three: 1. Did the justice of

the peace have jurisdiction of the attachment suits? 2. Had the circuit court upon the return of the certiorari a right to try the causes anew on their merits, and try the right of property? 3. Did the levy of the attachments displace the lien of the defendants in error, arising from their right, as vendors of the goods, of stoppage *in transitu?*

With respect to the first question involving the jurisdiction of the justice of the peace, it will be seen, by reference to the twenty-third section of the sixth article of the constitution, that the civil jurisdiction of justices of the peace is limited to causes in which the principal of the amount in controversy shall not exceed the sum of one hundred and fifty dollars. In this case, at the time the attachments were sued out the record shows that the defendant was indebted to the plaintiff therein, in the sum of $251.98, which constituted, in the language of the constitution, the principal of the amount in controversy between the parties. And if the law, to prevent a multiplicity of suits and unnecessary accumulation of costs, prohibits a plaintiff from dividing his claim, so as to bring it within the jurisdiction of a justice of the peace, the justice in this case had no jurisdiction. And this, we think, is settled by the former adjudications of this court in the cases of Grayson v. Williams, Walker, 298, and Schofield v. Pensons, 4 Cushman, 402. In the last mentioned case, the plaintiff below, on the 13th of May, 1850, held three notes against the defendant, one for $50, another for $44, and the third for $3.60. On that day he brought suit before one justice of the peace of Adams county on the note for $50, and on the same day another suit on the other notes before another justice of the peace of the same county. Judgments having been rendered by each justice of the peace for the plaintiff, the defendant prosecuted an appeal to the circuit court of said county, when the court, upon motion, dismissed both suits for the want of jurisdiction in the justices of the peace to render the judgments. The jurisdiction of justices of the peace was at that time limited to causes in which the

principal of the amount in controversy shall not exceed fifty dollars. In that case the court say: "The principal sum of these notes is $97.60, and this was the amount in controversy, because it was what the plaintiff claimed, and what the defendant refused to pay. It is then clear, that the claim was one of which a justice of the peace could take no jurisdiction whatever. If the law forbids the plaintiff from dividing his claim and suing before different justices of the peace at the same time for sums within their jurisdiction, *a multo fortiori* does the prohibition apply where the suits are brought before the same justice of the peace at the same time, as in the case under consideration. This doctrine commends itself to our adoption as founded in good reason and sound policy.

The next question is, Had the circuit court jurisdiction upon the return of the *certiorari* to try the causes *de novo*, and to try the right of property? Section 1336 of the Code of 1871 provides that when any cause is removed by *certiorari* to the circuit court, the court shall be confined to the examination of questions of law arising or appearing on the face of the record and proceedings. And in case of affirmance of the judgment of the justice, the same judgment shall be given as on appeals. In case of a reversal, the circuit court shall enter up such judgment as the justice ought to have entered, if the same is apparent, or may then proceed to try the cause anew on its merits. There was no final judgment of the justice of the peace which could be brought into the circuit court, either by appeal or. writ of *certiorari.* Even if the justice had the legal right to set aside a verdict and grant a new trial, it would only be an interlocutory order in the progress of the cause, and not such a judgment as could be removed to the circuit court by either of the modes above mentioned. But the justice had no power to set aside the verdict and grant a new trial. Where there is a verdict in the justice's court in a case in which he has jurisdiction, it is his duty to enter judgment on such verdict. His action in granting a new trial of the issue

which had been passed upon by the jury was simply void, and could furnish no ground for carrying the cases to the circuit court. The circuit court has no power to retain the suits and try them upon their merits for another reason, that the justice of the peace had no jurisdiction of them. The jurisdiction of the circuit court, in cases originating before a justice of the peace, must be regulated and determined by the jurisdiction of the justice. Glass v. Moss, 1 How., 520. In other words, in cases taken by appeal or *certiorari* to the circuit court from a justice of the peace, the circuit court only acts as an appellate court, and has no other jurisdiction than such as the justice had. Crapoo v. The Town of Grand Gulf, 9 S. & M., 205.

This brings us to the third and last question proposed to be considered in this case, in the solution of which it becomes necessary to determine the legal effect of the levy of the attachments upon the right of the defendants in error, as vendors of the goods levied on, to stop them *in transitu*, upon the hypothesis that the justice of the peace had jurisdiction of the attachment suits.

The right to stop goods *in transitu*, though first introduced and founded in equity, has long been considered and acted upon as a legal remedy. The courts of law, admitting the justice of the right, have recognized it in constant practice and extended a liberal aid in enabling an unpaid consignor or vendor to regain possession of property on its way to a vendee, who, from his circumstances, may not be in a condition to fulfill the terms of his contract. What was formerly a mere equitable claim is now, therefore, a legal possessory right. This right is nothing more than the extension of the lien which the vendor has on all sales for the price until after the delivery, to the very point of the goods coming to the actual custody of the vendee or his agent. The vendee may defeat the right of the vendor to stop the goods *in transitu* by a *bona fide* assignment of the bill of lading for value. And we are not aware that the right can be defeated in any other

mode, until the goods come to the virtual possession of the vendee. The earliest instance found of the recognition of this right in a court of equity, is the case of Wiseman v. Vandeput, in 2 Vernon, 203. The benefit which was expected to result to trade from the allowance of the right and apparent injustice of permitting the goods of a consignor, in the event of the consignee's bankruptcy, to be applied in payment of the other creditors of the latter, induced the courts of law to follow the example of the courts of equity, and to adopt, and by a variety of decisions to establish the right of stoppage *in transitu* as a legal right, and upon the same principles of justice it has since been looked upon both by courts of law and equity as a right to be favored and encouraged. Cross on the Law of Lien, 263.

In the case under consideration, the actual shipment of the goods to the vendees, by their order, constituted a good contract of sale, and a good constructive delivery, so as to vest the property in the goods in the vendees, and place them at their risk. But though this proceeding vested the property in the consignees, it was subject to the well established right of the vendors to stop the goods *in transitu,* in case they were sold on credit, and the consignees became insolvent. This right may be exercised at any time before the goods reach their ultimate destination, and come to the possession of the consignees. And the consignors have a right to judge for themselves of the danger of such insolvency, and to take measures to guard against it by stopping the goods in their transit to the vendees, should their insolvency occur before the goods come to the possession of the consignees. The effect of such stoppage *in transitu* is not to rescind the contract, but to reinstate the vendors in their lien and right to hold the goods in security for the price. Stanton v. Eager, 16 Pick., 473; Buckley v. Furniss, 15 Wend., 137; Naylor v. Dennie, 8 Pick., 198; Hays v. Mouille, 2 Harris, 48; Cox v. Burnes, 1 Clarke (Iowa), 64; and 4 ib., 480; 17 Wend., 504.

In a late case, Harris v. Hart, 6 Duer, 606, this subject is dis-

cussed with great ability by a court of large experience and learn-ing in commercial law, and an attempt is made to rescue the prin-ciple upon which all the cases profess to go, from something of that confusion into which some of the modern cases have thrown it. The principle upon which the whole subject rests is, that of giving the vendor a lien for the price of the goods until they come into the actual possession of the vendee or of his agent, for custody, and not for transportation. With this view, all reasonable con-struction should be in favor of maintaining the lien.

In the case at bar, the vendees have neither conveyed the goods to *bona fide* purchasers for value, nor received them into their possession; but, on the contrary, under the influence of an honest impulse, actually refused to receive them, and that before the attachments were levied upon the property. And in this, finding that they were insolvent, they acted as honest men in de-clining to receive goods they could not pay for, and in immedi-ately informing their vendors of that fact.

The adjudications upon this subject, notwithstanding some con-flict in them, tend to this result, that a merely constructive de-livery, though sufficient to entitle the vendor to demand the price of the goods, and to place them at the vendee's risk, does not de-feat the right of stoppage. That while the goods are in course of transportation to the place of destination, or are in the hands of an intermediate agent or warehouseman for the purpose of being forwarded, they are subject to this right. That after their arrival at the place of destination, and while in the hands of the carrier or wharfinger or warehouseman, for the mere purpose of delivery to the vendee, the vendor may resume the possession. But the right is lost if the vendee receive actual possession; or, if after their arrival at the place of destination, he exercises acts of own-ership over the goods; or his agent, having authority and power of disposal, exercises like acts. The transit continues until the goods come to the possession of the vendee or of some agent au-thorized to act in respect to the disposition of them, otherwise than by forwarding them to the vendee.

Nothing short of a *bona fide* sale of the goods for value, or the possession of them by the vendee, can defeat the vendor's right of stoppage *in transitu.* And hence it has been held that an assignee in trust for creditors of the insolvent vendee is not a purchaser for value, and consequently takes subject to the exercise of any right of stoppage *in transitu* which may exist against his assignor. Harris v. Pratt, 17 N. Y., 249.

The right of stoppage is held not to be divested, though the goods be levied on by execution or attachment, at the suit of a creditor of the vendee, provided it be exercised before the *transitus* is at an end. The vendor's lien has preference; it is the elder lien, and cannot be superseded by execution or attachment. Smith v. Goss, 1 Campb., 282; Buckley v. Furniss, 15 Wend., 137; House v. Judson, 4 Dana, 11; Wood v. Yeatman, 15 B. Monroe, 270; and 2 Kent, 550.

In the case of O'Brien v. Norris, 16 Md., 122, it was held that the vendor's right of stoppage *in transitu*, existing at the time of an attachment laid on the goods is not defeated or impaired by the attachment, nor altered by the sale of the goods by an order of court. Naylor v. Dennie, 8 Pick., 199; Butler v. Woolcot, 2 New Rep., or 5 Bos. & Pul., 64; Nicholas v. Lefeuvre, 2 Bing. (N. C.), 83, and Hays v. Mouille, 14 Penn. State, 48.

From the facts and circumstances of this case, as disclosed by the record, we think the right of stoppage *in transitu* existed at the time of the levy of the attachments, and that the filing of the claim to the property was a sufficient exercise of that right.

The defendants in error have a right to recover the value of the goods in an action of trover, or they may waive the tort, and recover the proceeds of the sale thereof in an action of assumpsit.

As the justice of the peace had no jurisdiction of the case, the circuit court could have none, and therefore it was error in that court to assume to try the cause upon its merits.

For this reason, the judgment must be reversed, and this court proceeding to render such judgment as the circuit court ought to

have rendered, doth order and adjudge that the attachment suits be dismissed for the want of jurisdiction in the justice of the peace, at the costs of the plaintiff.