[No. 885.]

# MORE, REYNOLDS & CO., RESPONDENTS, v. L. B. LOTT, APPELLANT.

FINDINGS OF FACT—WHEN WILL BE PRESUMED.—Where a judgment is rendered for plaintiffs upon certain findings, in his favor, without any reference to the findings of fact upon certain issues raised in the defendants' answer: *Held*, that it will be presumed that such issues were found against the defendant.

STOPPAGE IN TRANSITU—RIGHT OF.—To enable the vendor of personal property to exercise the right of stoppage *in transitu*, the goods sold must be unpaid for, the vendee must be insolvent, and the goods must be in transit.

IDEM—MATERIAL TESTIMONY.—Any testimony which tends to show the ownership and right of possession of the goods in plaintiff, is admissible in evidence.

IDEM—INSOLVENCY OF VENDEE.—Any well-founded information of an embarassment or failure on the part of the vendee to meet the demands of his creditors, is sufficient insolvency to justify the vendor in stopping the goods sold.

IDEM—IN TRANSIT.—Goods are in transit so long as they are on the passage, and until they come into the actual or constructive possession of the vendee, or of some person acting for him.

APPEAL from the District Court of the Eighth Judicial District, Esmeralda County.

The facts are stated in the opinion.

*T. W. W. Davies* and *A. W. Crocker*, for Appellant.

I. The right of stoppage *in transitu* is an equitable privilege not provided for by our statutes. (Hilliard on Sales, 248, sec. 3.) It only accrues under extraordinary circumstances. (Parsons on Cont. [6 ed.] 395 *et seq.;* Hilliard on Sales [3 ed.], 279 *et seq.*) The complaint in this case fails to show the existence of such circumstances. The authorities are clear and uniform as to what state of circumstances must exist to give a vendor the right of stoppage *in transitu.* (Parsons on Cont. 595 *et seq.;* Hilliard on Sales, 291, sec. 297 *et seq.*) The right is lost after the goods pass into the constructive possession of the vendee. (Parsons on Cont. 601 *et seq.;* Hilliard on Sales, 286.) To commence an action of this nature before demand that the purchase-price be paid or information given to defendant of the grounds upon which plaintiff based his right, is clearly error. (Parsons on Cont. 596 and notes.) The right is only a lien upon the goods, and should they be sold at a price greater than the purchase-money, then the vendee is entitled to the remainder. (Parsons on Cont. 598; Hilliard on Sales, 284.)

*Ellis & King* and *M. A. Murphy*, for Respondents.

I. Flinn's refusal to pay the freight upon the delivery of the goods was a refusal to receive the goods. (*Wight* v. *Gardner*, 66 Ill. 94; *Lecacheux* v. *Cutter*, 6 Cal. 514.)

II. The right of stoppage *in transitu* in this case was perfect. Plaintiffs were the vendors of the goods; the goods were in transit, unpaid for; vendee insolvent, and refused to receive the goods; goods in the hands of a representative of the freighter, or carrier, and no delivery, either actual or constructive, ever made to vendee. (*Blackman* v. *Pierce*, 23 Cal. 509; *Jones* v. *Earl*, 37 Id. 630; *Rucker* v. *Donovan*, 13 Kan. 251; *Muller* v. *Pondir*, 55 N. Y. 325; *Callahan* v. *Babcock*, 21 Ohio St. 281; *Pattison* v. *Culton*, 33 Ind.

240.) Defendant does not show payment of freight by him, nor connect himself with Fraser in his payment. (*Rucker* v. *Donovan,* 13 Kan. 251.)

By the Court, LEONARD, J.:

It is alleged in the complaint herein that on the seventeenth day of May, 1877, plaintiffs were the owners and entitled to the possession of certain personal property described; that on or about May 12, in Esmeralda county, defendant wrongfully and unlawfully took said property from the possession of plaintiffs, and still unlawfully withholds the same; that on the twenty-fifth day of May, and before the commencement of this action, plaintiffs demanded possession thereof, which was refused, and that said property was of the value of five hundred and forty-four dollars and fifty one cents.

Defendant denied plaintiffs' alleged ownership and right of possession, and averred that one Flinn was the owner and entitled to the possession. Defendant alleged that he was sheriff of said county, and as such officer attached said property on the seventeenth day of May, 1877, under and by virtue of a writ of attachment duly issued out of the justice's court in and for township No. 4, in said county, as the property of said Flinn, in an action entitled *Traver* v. *Flinn;* that he attached all the right, title and interest of Flinn in such property, and took possession thereof from the agent of one Ollinghouse, subject to a lien for freight, which lien he had discharged by paying the amount due. He denied plaintiffs' demand, and alleged that the value of the property did not exceed one hundred and fifty dollars.

Plaintiffs recovered judgment for a return of the property, or its value, three hundred and seventy-three dollars. This appeal is taken from an order denying defendant's motion for a new trial and from the judgment.

The cause was tried by the court without a jury, and the findings of fact were in substance as follows: 1. That on the thirteenth of April, 1877, More, Reynolds & Co. of San Francisco, plaintiffs herein, sold to one John Flinn of Candelaria, Esmeralda county, Nevada, a bill of goods

amounting to three hundred and seventy-three dollars; 2. That said goods were shipped from San Francisco by plaintiffs on the thirteenth day of April, 1876, consigned to John Flinn, Candelaria, Nevada; 3. That the goods arrived in Candelaria, on the sixth day of May, 1877; 4. That said Flinn refused to receive the goods; whereupon the teamster placed them in the hands and keeping of one Pierce of Candelaria for his freight money; 5. That immediately upon receiving the goods, Pierce notified plaintiffs of San Francisco that the good were in his possession, and that he would hold them subject to their orders; 6. That on the tenth day of May, 1877, defendant, as sheriff of said county, attached them as the property of said Flinn when they were in the hands of Pierce, in the suit of *Traver* v. *Flinn*, before-mentioned; 7. That on or about May 13, defendant, as such sheriff, was notified by Pierce that the property in question then under attachment belonged to plaintiffs; 8. That Flinn has not paid plaintiffs for any part of said goods; 9. That Flinn never received any portion of the goods or paid the freight thereon; 10. That Flinn did not have an attachable interest in the goods because he had not paid for them, and had refused to receive them; 11. That plaintiffs had not lost the right of stoppage *in transitu*.

As conclusions of law from the foregoing facts, the court found that the plaintiffs were entitled to recover from defendant the property described in the complaint, and in case a delivery could not be had, then plaintiffs should have judgment for three hundred and seventy-three dollars, with legal interest from May 10, 1877, and costs of suit.

Plaintiffs recovered, and was entitled to recover, if at all, upon the ground that he had the right of stoppage *in transitu*, and that he exercised such right while the goods were in transit. "To enable the vendor to exercise this right the goods sold must be unpaid for, the vendee must be insolvent, and the goods must be in transit." (Story on the Law of Sales, p. 366.)

"The right of stoppage *in transitu* is paramount to any lien against the vendee. Thus it may be exercised to defeat any attachment or execution served upon the goods by

a creditor of the vendee. An attachment operates only upon the interest of the debtor, but it does not defeat the paramount right of a stranger. If it did, the right of stoppage *in transitu* would be of little practical value, because an attachment of his property is often the first notice of the vendee's insolvency. The vendor's power of intercepting the goods is the elder and preferable lien, and not superseded by the attachment, any more than it would have been by the general right of a common carrier to retain all his customer's goods for his general balance." (Hilliard on Sales, 289; Chitty on Carriers, 168; *Hays & Black* v. *Mouille & Co.*, 14 Pa. St. 48.) That the goods in question were sold and shipped by plaintiffs to Flinn, and that they were not paid for as found by the court, are facts undenied.

It was not found in terms by the court, that Flinn was insolvent, nor was the court asked to find upon this question. Insolvency is a prerequisite of the right of stoppage *in transitu*, and the court could not have found for plaintiffs without first finding as a fact from the testimony, that Flinn was insolvent at the time. Some authorities hold that the requisite insolvency must occur between the time of sale and the exercise of the right, but others hold, and we think correctly, that it is sufficient if it becomes known to the vendor after the sale. (*Buckley* v. *Furniss*, 15 Wend. 137; *Reynolds* v. *B. and M. R. R.*, 43 N. H. 580; *Benedict* v. *Schaettle*, 12 Ohio St. 515.)

In *Tubbs* v. *Ghirardelli*, 45 Cal. 231, it is decided that although actual findings appear in the record, which are insufficient of themselves to support the judgment, yet other findings will be implied in favor of the party who recovers judgment, embracing every fact in issue not expressly found in favor of the party against whom judgment was rendered, or irreconcilable with the express findings.

In the *City of Oakland* v. *Whipple*, 39 Cal. 115, the court say. " But in the absence of our express finding   *   *   * we must presume the implied findings to have been such as were necessary to sustain the judgment." (*Warren* v. *Quill*, 9 Nev. 264; *Lovel* v. *Frost*, 44 Cal. 471; *Smith* v. *Cushing*, 41 Id. 98.)

We must presume, then, that the court found the fact of Flinn's insolvency, although it is not expressly stated in the findings; also the fact that he became insolvent subsequent to the purchase of the goods, or that plaintiffs learned of his insolvency between the date of the purchase and of the stoppage. In other words, the case stands as though the court had specially found the facts just stated; and if there was no substantial conflict of evidence in relation to those issues, a motion for a new trial having been made upon a statement containing all the evidence, on the ground, in part, that there was no proof of insolvency, it is our duty to review the evidence applicable to those issues, as we would have done if the court had specially found them against defendant. (*Steinbuck* v. *Krone*, 36 Cal. 306.)

In the first place, defendant in his answer sets up the fact that on the seventh day of May, 1877, an action upon a contract made by Flinn was brought in the justice's court, and that the goods in question were attached in that suit by defendant. These allegations imply that Flinn failed to pay his debt according to contract, from inability or from some other cause. The testimony of Pierce shows that one Olinghouse, a teamster, brought the goods to Candelaria; that the latter went into Pierce's place of business and inquired for Flinn; that he went in the direction of Flinn's place, but soon returned, and said he wished to store the goods marked and shipped to John Flinn, as Flinn had refused to pay the freight; that Olinghouse wished Pierce to hold them for freight. Pierce took the goods to hold for the teamster until the freight-money should be paid. Olinghouse indorsed upon the shipping receipts: "Pay Pierce & Vernon the within charges." Traver, plaintiff in the attachment suit in justice's court, testified that he knew Flinn expected goods to arrive from San Francisco by Olinghouse's teams; that he learned they were stored with Pierce & Vernon for freight; that on the same day he called on Pierce and asked him if he had any goods marked and belonging to Flinn; that Pierce said he had, and that he was holding them for freight, but had no other claim on them. Traver then told Pierce that Flinn was owing him, and asked if he

(Pierce) would give up the goods to Traver upon receiving the freight-money. Pierce did not wish to do so, and Traver told him that he should attach the goods.

The deposition of Samuel L. More, one of the plaintiffs, was admitted in evidence. It was taken under an agreement "that said deposition may be used on the trial of said action, subject to the same objections as if the said witness were there personally present and testifying therein." The eighth question was this: "Did you learn of the insolvency of said Flinn? If so, what did you do?" Witness answered: "We learned on or about the twelfth day of May, 1877, through Messrs. Pierce & Vernon, of Candelaria, of the failure of said Flinn, and they, Pierce & Vernon, at the same time notified us that they had received the goods shipped by us to Flinn, and had stored them for us, subject to our order."

The answer was objected to on the grounds that it was not responsive to the interrogatories; that it was immaterial; that it was hearsay; that there was no allegation in the complaint which could be proven by such testimony.

The first portion of the answer was directly responsive to the question. It was material. It was not hearsay. It tended to support the allegations of ownership and right of possession in plaintiffs; that is, their right to stop the goods while in transit, and was admissible under the pleadings. The complaint was sufficient (*Schofield* v. *Whitelegge*, vol. 12 Abb. Pr. R., N. S. 320; *Pattison* v. *Adams*, 7 Hill, 126; *Bond* v. *Mitchell*, 3 Barb. 304; *Vanderburgh* v. *Van Valkenburg*, 8 Barb. 217), and any testimony tending to prove the principal issues, ownership and right of possession, was properly admitted. (*Gray* v. *Nations*, 1 Ark. 567.) The first part of the answer objected to tended at least to prove a special property in plaintiffs in the goods, and that, with the right of possession, is sufficient to maintain this action.

Defendant's objection was to the entire answer. If the last portion was not responsive, or was open to any of the objections stated, defendant should have objected to that part, or moved to strike out such portion. The objection to the entire answer was not well taken.

The last part of the answer would have been entirely proper in reply to the ninth interrogatory, and the objections under the eighth are purely technical. The other objections to the deposition were groundless, and it was properly admitted.

In answer to the ninth interrogatory the witness stated: "Immediately upon learning of the failure of Flinn, and that the goods had not been delivered to him, we instructed Pierce & Vernon to draw on us for the amount of the freight, and to dispose of the goods for us, and if unable to dispose of them as directed, then to hold them subject to our order."

We think the proof was sufficient to sustain the implied finding that Flinn was insolvent, and that he either became so subsequent to the sale of the goods, or that plaintiffs did not learn the fact until after the goods were attached.

"Any well-founded or probable information of such an embarrassment on the part of the other party as to prevent him from honoring his drafts, or meeting the demands of his creditors, is sufficient insolvency to justify the vendor in stopping the goods sold. But if, through excess of caution, or from misinformation, he make a mistake and stop the goods when the buyer is not insolvent, the buyer would be entitled to claim the goods and an indemnification for all the expenses growing out of the stoppage." (Story on the Laws of Sales, p. 369; *O'Brien* v. *Norris*, 16 Md. 122; *Secomb, Voorhies & Co.* v. *Nutt*, 14 B. Mon. 324; Smith's Mercantile Law, 678; *Lee* v. *Kilburn*, 3 Gray, 595; *Herrick* v. *Borst*, 4 Hill, 652; *Bayly* v. *Schofield*, 1 M. and S. 350; *Shone* v. *Lucas*, 3 Dowl. and Ryland, 223; *Chandler* v. *Fulton*, 10 Tex. 2.)

We are now brought to the inquiry whether the goods were or were not in transit, at the time plaintiffs claimed them adversely to Flinn.

It is settled by all the authorities that if goods have not been paid for, and the vendee becomes insolvent, the right of stoppage exists so long as they are on their passage, and until they come into the actual or constructive possession of the vendee, or of some person acting for him. The

· goods in question were directed, and were to be delivered to John Flinn at Candelaria. They arrived at the place named, but never reached the hands of the consignee. The teamster had the right to hold them until he received the freight money. He refused to deliver them until his bills were paid, and so long as they were in his hands, it cannot be said they were either actually or constructively in ·the possession of Flinn. Until the freight money was paid, Olinghouse had the entire possession and control of the ·goods, and after they were put into the hands of Pierce & Vernon, they succeeded to his rights as his agents, and not the agents of Flinn. Pierce & Vernon's store was a mere substitution for the teamster's wagon, and the goods were not any more in Flinn's possession, actual or constructive, after removal, than they were before. (Story on the Law of Sales, p. 382; *Mottram* v. *Heyer*, 5 Denio, 629.) If Flinn had paid the freight money due, before plaintiffs gave notice to Pierce & Vernon, and either taken the goods into his own possession or empowered them to hold the property as his agents, the transit would have been ended, and plaintiffs would have lost their right. But there was no privity of ·contract between defendants and Flinn, or Traver and ·Flinn, and payment by defendant or Traver, after attachment, gave Flinn neither possession nor right of possession, nor did it affect plaintiffs' prior and superior right to stop the goods at any time before they came into Flinn's possession. Defendant paid the freight bills as the agent of Traver, the only effect of which was to discharge the teamster's lien, and by such payment and the attachment, de-·fendants became possessed of the goods, but Flinn did not. Worley, deputy sheriff, who attached the property, testified that it was never in Flinn's possession; that Flinn never exercised any control or acts of ownership over it. Besides, the freight bills were not paid until after plaintiffs had instructed Pierce & Vernon to hold the goods for them. So the transit was no nearer ended even on the twenty-third or twenty-fifth of May, when the defendant removed the property from Pierce & Vernon's store, and after plaintiffs had notified them of their claim, and directed them to

retain it for plaintiffs, than it was when the goods were in the teamster's wagon. In *Kitchen* v. *Spear*, 30 Vermont, 545, the facts were that A., residing in Vermont, purchased goods of B. in New York, to be forwarded by railroad to R., where A. resided. Immediately on the arrival at R., and before they were placed in the warehouse of the railroad company, A. having in the meantime become insolvent, C., a creditor of A., caused the goods to be attached, and to be taken directly from the cars and removed away from the railroad. The officer paid the freight upon the goods and retained possession of them under the attachment, until B. demanded them of him. It was held that B.'s right of stoppage *in transitu* had not ceased at the time of the attachment, or of the demand, and that he was entitled to the goods. (Hilliard on Sales, p. 301.) In Story on the Law of Sales, p. 389, the author says: "A delivery by a carrier is not complete until he actually and entirely parts with the possession; and this he is not bound to do until the freight due to him is tendered or paid; although if he waive such right by delivery, without payment, he thereby destroys the right of stoppage." Our opinion is, that at the time plaintiffs exercised the right of stoppage *in transitu* of the goods in question, the *transitus* was not at an end.

It is true that Flinn had the right, within a reasonable time after the stoppage, to pay the amount due plaintiffs and take the goods, but as between plaintiffs and defendant, the former were entitled to a judgment for a return of the entire property or its value. The court should have found the fact of Flinn's insolvency, but as we have seen, such finding is implied in support of the judgment. The tenth and eleventh findings of fact are properly conclusions of law—but no objection or exception having been taken to them in the court below, and no application having been made to correct or amend them, the point cannot be raised for the first time in this court. (*State* v. *Manhattan S. M. Co.*, 4 Nev. 318.)

The order and judgment appealed from are affirmed.