CLARK and others vs. BARTLETT, imp.

*November 30 — December 17, 1880.*

SALE OF GOODS:  *Property in transit: Consignor's rights against consignee's general assignee.*

Where property is in transit at the time of the making of a voluntary assignment for the benefit of creditors under ch. 80, R. S., and is not mentioned in the assignment or inventory, and neither the vendor nor the vendee ever intended that the title should vest in such vendee making the assignment, the assignee gets no title to the property even if he gets it into his actual possession.

APPEAL from the Circuit Court for *Winnebago* County.

Replevin, for a quantity of goods. The cause was tried by the court, and judgment rendered in favor of the plaintiffs,

from which the defendant *Sumner Bartlett* appealed. The case is sufficiently stated in the opinion.

For the appellant there was a brief by *Weisbrod & Harshaw*, and oral argument by *Mr. Weisbrod*.

For the respondents there was a brief by *Finch & Barber*, and oral argument by *Mr. Barber*.

CASSODAY, J. There is no material conflict in the testimony, and it fully sustains the findings of fact. It appears that in April, 1879, the plaintiffs, "*Clark Bros.*," being wholesale merchants in New York, by their traveling agent, Courtney, agreed to sell and ship from New York to the defendants Boles & Hull, at Oshkosh, certain hats and caps, to be in accordance with samples then exhibited. Previous to the shipment of the goods, Boles & Hull had some correspondence with Courtney in regard to their financial affairs. The substance of the correspondence was, that Courtney, having heard rumors concerning the financial standing of Boles & Hull, wrote them, inquiring whether he should ship the goods or not. In reply to Courtney, Boles wrote him in effect to let the goods come, and that if it was not all right — if there was anything wrong, any trouble any way — if they failed to settle with their creditors, and go along with their business as merchants, — then, in that case, the goods would not be accepted, but would be immediately returned. Upon these conditions *Clark Bros.* allowed the goods to go forward, but they did not reach Oshkosh till on or about May 13, 1879. May 6, 1879, Boles & Hull made an assignment for the benefit of their creditors, without preferences, in the usual form, under chapter 80, R. S., to the defendant and appellant here, *Sumner Bartlett*, of all their property, both firm and individual, except such as was exempt by law; and the assignee accepted the trust and gave the required bond. The next day, and while the goods were in transit, Courtney telegraphed from Chicago to Boles & Hull that the goods had been shipped, and asked them whether he should

stop the goods, or whether they wanted them. To this Boles replied, in effect, that they should want the goods if ·they could get a settlement with their creditors, otherwise not; to let the goods come, and if they could not use them he would order their return immediately, and that he, Courtney, should be all right. On the arrival of the goods at Oshkosh, May 13th, Boles paid the freight for the benefit of the owners out of his own money, which he obtained after the assignment, and notified their attorneys and agents that the goods had arrived, that he did not mean to accept them, and to take the goods and return them according to the stipulations he had made. The assignee took possession of the goods, but they remained unpacked. There is no claim that the assignment specifically described or referred to the goods, nor that the inventory, sworn to by Boles & Hull, May 14, 1879, and on the same day certified to be true and correct by the appellant, *Bartlett*, contained any specific description of or reference to these particular goods, or to any debt to *Clark Bros.* as the purchase price of these goods. After demand and refusal, the plaintiffs brought this action against *Bartlett*, the assignee, and Boles & Hull, to recover the goods, and obtained the judgment from which this appeal was taken by *Bartlett*.

From these facts it is very evident that *Clark Bros.* never intended to part unconditionally with the title or possession of the goods, and it is equally clear that Boles & Hull had no thought or expectation of obtaining such title or possession. On the contrary, the testimony clearly shows that both parties understood that the title to the goods and the right to the possession should remain in *Clark Bros.*, unless Boles & Hull should succeed in effecting a settlement with their creditors so as to be able to go on with their old business as merchants and pay for the goods. It would seem that *Bartlett* must have understood at first that Boles & Hull had no title to the goods, or he would not have certified to the correctness of the inventory, as he did the day after the goods

arrived at the store. The validity of the assignment under which *Bartlett* had assumed an important trust, depended upon that inventory being made as required by section 1697, R. S.; and since *Bartlett* testified that he recollected the arrival of the goods, and thought it was May 13th, the day before he certified to the correctness of the inventory, we may well infer that *Bartlett*, as well as Boles & Hull, intentionally left the goods out of the inventory and made no reference to them, nor to any debt to *Clark Bros.* on account of them. Whether an assignee for the benefit of creditors, under our statutes, takes the title to any property intentionally omitted by him and the assignor from the inventory, or whether such omission would affect the validity of the assignment, it is not necessary here to decide. The question here presented is, whether *Bartlett*, as the assignee of Bowles & Hull, contrary to the intention of all the parties to the contract, got the title of these goods, shipped upon the conditions named, merely because *Clark Bros.* did not in fact stop the goods before they got into his possession. We are clearly of the opinion that he did not. This proposition is supported by the authorities. In *Salte v. Field*, 5 Term R., 211, it was held that "the property of goods bought by an agent for the vendee, delivered by him to the vendee's packer, in whose hands they are attached by the vendee's creditors, revests in the vendor, so as to avoid the attachment, by the vendee having countermanded the purchase by letter to his agent dated before such delivery, though not received till afterwards, the vendor assenting to take back the goods." Lord KENYON, C. J., said: "It was in the power of the buyer and seller to put an end to the contract as if it had never existed;" and BULLER, J., said: "With regard to the justice of the case it is impossible to entertain any doubt." In that case the goods were actually delivered to the vendee's packer, and from the report of the case it would seem that they must have been attached before both parties assented to the rescission.

The case has been referred to as an exceptional one, and may be regarded as going to the extreme — certainly much further than it is necessary to go to sustain the judgment in this case.

In the later case of *Bartram v. Farebrother*, 4 Bing., 579, it appears that "P., to whom goods were consigned, said, on their arrival at the wharfinger's, that he would not have them, and directed an attorney to do what was necessary to stop them. The attorney, on the third day of November, gave the wharfinger an order not to deliver them to the consignee, which order the consignor wrote to confirm on the sixth; on the seventh the goods were claimed, under an execution, at the suit of A. *Held*, that the contract between P. and the consignor was rescinded; that the *transitus* was not ended by the arrival of the goods at the wharf and the order given by P.; and that the consignor had a right to stop *in transitu*." To the same effect is the still later case of *James v. Griffin*, 1 M. & W., 20, in which PARK, B., said: "The question for the jury was, whether the act of the son was a taking possession by the bankrupt *eo animo* as owner. If it was, the *transitus* was at an end; if not, and he merely meant to take possession for a limited purpose, for the benefit of the seller, the *transitus* was not at an end." See, also, *Bolton v. Railway Co.*, L. R., 1 C. P., 431; *Grout v. Hill*, 4 Gray, 361; *Purviance v. The Bank*, 8 N. B. R. R., 447; *Sturtevant v. Orser*, 24 N. Y., 538.

With these authorities, and many more which might be cited, we feel safe in holding that the assignee in a voluntary assignment for the benefit of creditors, under chapter 80, R. S., gets no title to property in transit at the time of making the assignment, and which is not mentioned or referred to in the assignment or the required inventory, and where neither the vendor nor the vendee ever intended that the title should vest in such vendee making the assignment, notwithstanding he may get the property into his actual possession.

*By the Court.* — That portion of the judgment of the circuit court appealed from, is affirmed.