## DREYFUS & WEIL *v.* MAYER, SON & CO.

1. SALE. *Stoppage in transitu. Attachment. Fund in court.*

   The right of stoppage *in transitu* is not lost by the seizure of the goods *en route* under attachment against the buyer; and even if the goods, being attached, are delivered to a claimant on execution of a forthcoming bond, the bond will represent them, and the seller may intervene and assert his right thereto.

2. APPEAL TO CIRCUIT COURT. *Jurisdiction. Trial of new issues.*

   If an attachment suit in the justice court be decided against the plaintiff, and he appeals, the circuit court has jurisdiction, though after dismissal by the plaintiff, to allow claimants' issues to be made up and tried, although no trial thereof was had in the justice court, for the appeal of the plaintiff on the main issue carries with it all such ancillary issues as are necessary to determine the proper disposition of the property.

3. CLAIMANTS' ISSUES. *Two or more for same property. Code 1880, §§ 1774, 2460.*

   Under § 2460, Code 1880, as many claims may be interposed to property seized by attachment, and as many issues made up to try the same, as may be necessary; and this, whether the property remains in court or has been delivered to a claimant on bond, under § 1774.

FROM the circuit court of Tunica county.
HON. R. W. WILLIAMSON, Judge.

The opinion states the facts.

*Lowe & Cochran*, for appellants.

When appellees filed their claim with the justice, there was no way to the circuit court except by appeal. The circuit court can have no jurisdiction to try this issue, which was not tried in the justice's court. The dismissal of the attachment carried with it the whole proceedings. Laws 1884, p. 77.

The right of stoppage in transit had been lost. That is a possessory one. *Morris* v. *Shryock*, 50 Miss., 590. Besides, the journey was ended, and the goods were sold in good faith. 60 Am. Dec., 188; 10 Tex., 2; 20 Vt., 172; 49 Am. Dec., 768.

*St. John Waddell*, for appellees.

The courts extend a liberal aid to unpaid consignors in regaining possession of their property on its way to a buyer who will not be able to fulfill the terms of his purchase. Cross on Liens, 263. Nothing short of actual delivery or a *bona fide* sale of the goods can defeat the seller's right of stoppage. *Harris* v. *Pratt*, 17 N. Y., 249. Levy of execution or attachment does not take away the right. 1 Camp., 282; 15 Wend., 137; 4 Dana, 11; 15 B. Monroe, 270; 2 Kent's Com., 550. Nor does the sale of the goods by order of court. 16 Md., 122; 8 Pick., 199; 2 New Rep. (5 Bos. & Pul), 64; 2 Bing. (N. C.), 83; 14 Pa. St., 48. All these authorities are cited with approval in *Morris* v. *Shryock*, 50 Miss., 590.

COOPER, J., delivered the opinion of the court.

This case was tried in the court below by the judge, a jury being waived, and on an agreed state of facts.

In September, 1890, J. L. Savage was engaged in the liquor business at Tunica, Miss., and on the —— day of September ordered certain goods from the appellees, merchants at Cincinnati, Ohio, which goods were purchased on credit and shipped to him by appellees. The goods reached Tunica on September 28. On the 26th of September, Savage, having

paid the freight on the goods, which goods had not then arrived, sold to appellants, Dreyfus & Weil, "his entire stock of goods," giving them a bill of sale, in which each article sold was specified, and concluding as follows: "All the above described property, being situated in my saloon, in the town of Tunica, county of Tunica, except the last four named articles, said articles being in the L., N. O. & T. Railroad depot in said town. The four last named articles on the bill of sale were "one half-barrel of peach brandy, one half-barrel of F. W. McCullough whisky, one barrel of Indian Hill Bourbon, one case Geneva gin." On the arrival of the goods sold by appellees to Savage (September 28), Dreyfus & Weil took possession of them (but without removing them from the depot) and rebilled them to one Kernstein, at Clarksdale, Miss. On the 8th day of October, the goods, which were yet in the depot, were seized, under a writ of attachment issued at the suit of one White against Savage. Dreyfus & Weil interposed a claim to the same, and, upon executing a claimant's bond, the officer delivered them the goods. On the 20th day of October the action between White and Savage was tried before the justice of the peace, and judgment rendered in favor of the defendant, and the plaintiff immediately prayed and was granted an appeal to the circuit court. After this had been done, Mayer, Son & Co. filed their claim to the goods seized, under the right of stoppage *in transitu.* No action was taken before the justice on this claim, and in sending up to the circuit court the papers on the appeal of White, the justice did not send the claim of appellees. The appellees, however, appeared before the circuit court, and there filed their claim again. After the claim of appellees had been filed in the circuit court, White, the attaching creditor, dismissed his suit; but the court, upon the application of appellees, and over the objection of appellants, directed an issue to be made up for the trial of the claim of appellants. Upon this issue judgment was rendered in favor of appellees, and from that judgment Dreyfus & Weil appeal.

The principal question presented is, whether, on the agreed facts, Mayer, Son & Co. could exercise their right of stoppage *in transitu.* The case is argued here by counsel for appellant upon the assumption that the goods seized were sold by Savage to Dreyfus & Weil, and were described, or intended to be described, in the bill of sale executed by him to them. On the other hand, it is assumed by counsel for appellees that Savage did not sell or intend to sell these goods to Dreyfus & Weil, but that they, having bought a particular lot of goods, without right, claimed also to own the goods seized. This very material fact is left, by the agreed statement of facts, to stand only upon the face of the bill of sale. There is not one syllable in the facts agreed on going to show that the goods in controversy were intended to be covered by that clause in the bill of sale describing the "last four items" as then in the depot at Tunica. For aught that appears in the agreed facts, there were other packages at the depot when the sale was made to which the bill of sale applied, and which were received by the purchasers. If, as matter of fact, the goods in controversy were sold "in good faith" by Savage to Dreyfus & Weil, and afterwards came to their possession before the levy of the writ of attachment, it would be difficult to perceive upon what theory the right of stoppage *in transitu* could be thereafter exercised. Under such circumstances, the journey would be ended by the goods coming into the possession of the representatives of the purchaser, and, with the journey, the right of stoppage by the seller would also cease; but the appellants, so far as the agreed facts disclose, were not the purchasers of these goods, and, because they were not, did not stand as the representatives of the buyer, Savage. They were, therefore, mere interlopers, and their act in taking possession of the goods was wholly ineffectual, either in favor of themselves or of Savage, or as against the appellees. Unless, therefore, the right of the sellers to exercise the remedy by stoppage *in transitu* was affected by the levy of the attachment by White, or by what

occurred thereunder, it yet existed, and the judgment of the court was correct.

The contention of appellant that the right of stoppage *in transitu* can be exercised only where the property itself can be found, is not supported by either reason or authority.

It is well settled that the levy of an attachment does not affect the right. 5 Lawson, Rights & Rem., § 2495 ; *Morris* v. *Shryock*, 50 Miss., 590. And though the goods be converted into money by an order of the court, the seller may exercise the right, by resorting to the fund realized by the sale. *O'Brien* v. *Norris*, 16 Md., 122; *Hause* v. *Judson*, 4 Dana (Ky.), 7, 29 Am. Dec. and notes. So, also, if, upon sale of the goods the court directs the proceeds to be paid to one of the parties to the suit, upon his entering into bond for repayment of the money, the nature of the fund is not thereby changed and the right of stoppage *in transitu* is not lost. *Hall & Loney* v. *Richardson*, 16 Md., 397; 77 Am. Dec., 303.

It is next contended by the appellants that the circuit court had no jurisdiction to try the claim interposed by the appellees because no trial on that claim was had in the justice's court, the point being that the circuit court has no jurisdiction in this cause except such as it acquired by appeal from the judgment of the justice. The reply to this argument is, that the jurisdiction exercised by the court in trying the claimant's issue is only ancillary, for the purpose of determining what disposition it shall make of property seized in a controversy in which the court has jurisdiction. The appeal by the plaintiff in attachment transferred to the circuit court the power to hear and determine the controversy between the plaintiff and defendant, and, as incident to this, was the power to determine all merely ancillary issues. By express provision of law, no trial of the right to the property levied on could be had until " after judgment in favor of the plaintiff in attachment."

The justice having rendered judgment against the plaintiff, it was impossible for him to submit the issue made up be-

tween himself and the claimant until after an appeal to the circuit court and a trial and judgment in his favor there. The cause could not be partly in one court and partly in another at the same time, and since the judgment against the plaintiff precluded the justice from trying the issue between the plaintiff and the claimant, it necessarily follows that the whole case was carried to the circuit court by the appeal of the plaintiff.

The only remaining question is, whether two or more claims may be interposed to property seized under execution or attachment. By § 2460 it is provided that "any person, other than the defendant, claiming property attached, may interplead without giving bond, but the property attached shall not thereby be replevied," etc. It is clear, then, that if no bond had been given by any claimant, any number of independent and distinct claims might have been interposed and tried in this suit. Does the fact that a bond was given so change the condition of things as to preclude a second claim from thereafter being interposed? Certainly it could not be held that the right of one who, under § 2460 of the code, had interposed his claim to the property attached, without giving bond, could be affected or impaired by the interposition of another claim by a third person, and the execution of a bond for the forthcoming of the property under § 1774 of the code. To so decide would be to hold that one pursuing the remedy pointed out to him by law for the assertion of his rights, and forbidden by another provision (§ 2633) from bringing replevin against the officer, might, without fault on his part and without his knowledge, find the property put beyond his reach by the action of an adverse claimant and his right to a trial of the issue tendered by him, thereby defeated.

We are not called upon to decide whether the sureties upon the forthcoming bond were liable to judgment in favor of appellees. The sureties have not appealed, and certainly Dreyfus & Weil, to whom the property was delivered, cannot assign error for them. They, at least, were properly directed

to restore the property, and cannot complain of a wrong done
to others as to which the injured party does not object.

*The judgment is affirmed.*