WEBER, PLAINTIFF IN ERROR, v. BAESSLER ET AL., DEFENDANTS IN ERROR.

1. STOPPAGE IN TRANSITU.

A vendor of goods sold on credit has a right to stop the same and resume possession thereof while they are in intermediate hands, in case the vendee becomes insolvent before acquiring actual possession thereof.

2. SAME.

Goods are regarded as being in transit until they have passed out of the possession of every intermediate agency; and until the transit has been determined by an actual delivery to the vendee or consignee the right of the vendor to reclaim the goods is unimpaired by any seizure thereof at the suit of creditors of the vendee.

3. SAME.

A delivery of the goods to an agent, whether of the vendor or vendee,

who holds them merely for the purpose of transmission to the vendee, is not a final delivery such as determines the right of stoppage.

4. SAME.

A delivery of the goods by an intermediate agent to a stranger, as to a sheriff holding a writ of attachment against the vendee, does not determine the right of stoppage.

*Error to the District Court of Arapahoe County.*

Mr. M. B. CARPENTER and Mr. W. N. McBIRD, for plaintiff in error.

Mr. JAMES A. KILTON, for defendant in error.

THOMSON, J., delivered the opinion of the court.

This action is for the possession of personal property. The cause was submitted to the court below on the following agreed statement of facts:

On June 1, 1889, Thursie & Anderson, who were partners doing a retail shoe business in the city of Denver, ordered from the defendants in error, plaintiffs below, who were partners engaged in manufacturing and selling at wholesale shoes, in Buffalo, New York, a bill of shoes, amounting in the aggregate to the sum of $297.

The plaintiffs, Baessler & Co., filled the order and shipped the same June 19, 1889, by railroad freight to Thursie & Anderson at Denver.

No part of the price of the shoes has been paid, the time for payment being sixty days after the filling of the order. The value of the goods is $297.

On June 28, 1889, the goods arrived in Denver over the Union Pacific Railroad, shipped in the usual course of business.

June 21, 1889, Thursie & Anderson became, and still are, insolvent. On the last mentioned day several judgments were rendered against them, and their stock of goods seized under executions issued on the judgments; and on the next

day, June 22d, an attachment was sued out, and levied upon the same stock, subject to the prior levies.

All of these levies were made by the defendant as sheriff, who took the goods into his possession and closed up the business house of Thursie & Anderson..

On the 22d of July, 1889, the plaintiffs in the attachment suit recovered judgment against Thursie & Anderson, and caused execution to be issued and placed in the hands of the defendant as sheriff.

On June 28, 1889, the City Transfer Company, a common carrier in the city of Denver, to whom the goods had been transferred for final delivery, according to the custom in such cases presented to P. A. Anderson, a member of the firm of Thursie & Anderson, a bill for freight and delivery charges on the goods. This bill Anderson declined to pay, and at the same time declined to receive the goods, informing the agent of the Transfer Company that the defendant as sheriff had closed up the store of the firm, and levied upon all its goods, and that the goods in question should be returned to the plaintiffs, Baessler & Co., and not delivered at the firm's old place of business.

Afterwards, and on the same day, the transfer company delivered the goods to the defendant sheriff at the old place of business of Thursie & Anderson, and took his receipt for the same. At the time of receiving the goods, the defendant sheriff paid to the transfer company the freight charges due. The defendant, having thus obtained possession of the goods, levied upon them as sheriff under the attachment mentioned, and after July 22, 1889, levied upon them under the execution issued upon the judgment in the attachment suit.

The plaintiffs, Baessler & Co., tendered to the defendant the amount of freight charges paid by him and demanded possession of the goods, but defendant refused to deliver possession, or accept the freight charges.

The plaintiffs, Baessler & Co., did not know of the failing circumstances of Thursie & Anderson, or of the attachment, judgments and executions against them, until June 26, 1889,

when they immediately set about stopping the goods *in transitu*, making such effort as they could in that direction.

Prior to the delivery of the goods to the transfer company by the Union Pacific Railroad Company, Thursie & Anderson had given the transfer company a general order to obtain all freight received for them at any railroad station in Denver, which order was in force June 28, 1889, at the time the transfer company received the goods.

At the time the transfer company received the goods it had no notice of the failing circumstances of Thursie & Anderson, and the Union Pacific Railroad Company had not received instructions to stop the goods.

Upon these facts the court found that the plaintiffs were entitled to the possession of the goods, and rendered judgment accordingly. The defendant comes here by writ of error.

The application of the doctrine of stoppage *in transitu* to the foregoing facts constitutes the only controversy in this case. A vendor has the right to stop goods sold and unpaid for, while they are in intermediate hands, in case the vendee becomes insolvent before he has acquired the actual possession of them. The origin of the doctrine is involved in some obscurity, and the reasons on which it is based are differently and not very satisfactorily stated by different courts; but the right of the vendor to resume possession of goods which have not been paid for, while on their way to the vendee, or still undelivered to him, in case of his insolvency, is thoroughly established. This right must be exercised while the goods are on their passage and before possession is taken by the vendee; and if they have ceased to be in transit, and have come into the hands of the vendee, or of his agent for custody, the vendor's right of stoppage is defeated. The goods are regarded as in transit until they have passed out of the possession of every intermediate agency, and have been actually delivered to the consignee; and until the transit has been determined by such actual delivery, the right of the vendor to reclaim the goods is unimpaired. This right is not

affected in the slightest degree by any intervening seizure of the goods at the suit of creditors of the vendee. While it exists, it is paramount to any other lien or claim. *Smith v. Goffs*, 1 Campb. 282; *Buckley v. Furniss*, 15 Wend. 137 ; Hilliard on Sales, 289; *Morris v. Shryock*, 50 Miss. 590.

It is contended that the general order, given by Thursie & Anderson to the City Transfer Company, authorizing the delivery to it of all freight received for them at any railroad station in Denver, constituted the transfer company their agent, so that the delivery to it of the goods in question was a delivery to them, and that upon such delivery the transit was at an end. We do not think this position tenable. The City Transfer Company was a common carrier. It carried goods for the public, and not specially for Thursie & Anderson. The order was merely the designation of that company as the agency through which they desired their goods to be transported from the railroad stations in Denver to their place of business. These goods were transferred to it for final delivery. According to the custom in such cases, it presented (by its collector) to Thursie & Anderson the bill for freight charges on the goods ; so that it seems to have been the agent of the railroad companies to collect freight money due them, as well as the agent of consignees for the delivery of goods ; and it is to be inferred from the language of the agreed statement that the payment of these freight charges by Thursie & Anderson to it was a condition precedent to the delivery by it, to them, of the goods of which they had taken charge. It is clear that the City Transfer Company was simply the last carrier between the city of Buffalo, where the goods were originally shipped, and the place of business of Thursie & Anderson in Denver, and so connected with the different lines over which the goods were transported that it collected the entire charges for carriage, including its own. Its relation to Thursie & Anderson was therefore that of common carrier, selected by them to do their business, and nothing more.

But there is another reason why the delivery of the goods

to the company was not such delivery as would cut off any right of plaintiffs. It is true that final delivery, so as to determine the transit, may be made to an agent as well as to the principal; but such agent must be an agent to receive possession of the goods and keep them for the principal. A delivery at the station to the vendee himself, or to his servant, sent by him for the purpose of receiving them, is a delivery to him; but a delivery to an agent, whether he be the agent of the vendor or the vendee, who holds the goods merely for the purpose of transmission to the vendee, is not final delivery. Story on Sales, § 334; 2 Benj. on Sales, Rev. Ed. 1071, 1072, secs. 1247, 1248, 1249; *Morris v. Shryock, supra.*

The delivery of the goods by the railroad company to the transfer company was therefore not a delivery to Thursie & Anderson; and during the time they were in the possession of the transfer company, they were still in transit, and subject to stoppage by the plaintiffs. They were not delivered to Thursie & Anderson at all. Thursie & Anderson refused to receive them, and directed that they should not be delivered at their old place of business, but should be returned to the plaintiffs. The transfer company, afterwards, in disobedience of these directions, delivered them at the old place of business of Thursie & Anderson, to the defendant sheriff. Down to the moment of that delivery the goods were in transit. What was the effect of such delivery to the defendant? He was not the agent of Thursie & Anderson, or of the plaintiffs. He was a stranger. A delivery to him was certainly no delivery whatever to Thursie & Anderson. The transfer company held the goods subject to the right of recall by the plaintiffs. It was not in its power to do anything by which that right could be defeated or compromised, except to deliver the goods to the consignees, and this it did not do. It could transfer to the defendant no greater right to the goods, or dominion over them, than it possessed; so that the defendant, in taking the goods, assumed the same relation to Thursie & Anderson, and to the plaintiffs, which had been

occupied by the transfer company. By the transfer to him, and by his acts as an officer in levying the writs, the rights of the plaintiffs in respect to the goods were not changed in the smallest particular. It does not appear when demand was made by the plaintiffs upon the defendant for the goods, but it is presumed that proper diligence was exercised in that regard. No complaint is made of undue delay. By the demand, the right of stoppage *in transitu* was properly exercised, and from the time of the demand the plaintiffs were entitled to the possession of the property. *More v. Lott*, 13 Nev. 376; *Kingham v. Denison*, 84 Mich. 608; *Clark v. Bartlett*, 50 Wis. 543; *Morris v. Shryock, supra; Grout v. Hill*, 4 Gray, 361.

The judgment is correct and will be affirmed.

*Affirmed.*