Wheeler, J.
It is objected to the judgment that the court erred in permit-
ting tiie intervention of the persons composing of the linn of Patrick & Co. By their inters'entiou the consignors could not, it is true, shield tiie defendants, Fulton &
Hensley, froin'responsibility for their own unauthorized acts. But tiie rights of the consignors were in controversy between tiie original parties to the suit. It is evident that its decision might materially affect their rights, and, perhaps, subject them to the necessity of further litigation. They were the real party in interest., adversely to the plaintiff; and, we think, they were rightly admitted, to enable them the more effectually to assert and maintain their right, and in order that tiie whole controversy might be settled in one suit.
Tiie defense rested on the right of stoppage in transitu, and the principal question in tiie case is, whether'the rig-lit existed and was rightly exercised as between tins parties. This involves the inquiry, lirst, whether the goods had reached their destination, and liad come into tiie possession of tiie vendee; and if not, secondly, whether tiie right of the consignors was defeated by tiie assignment of tiie bill of lading-.
1. The law is well settled that,’ whore goods have been shipped upon credit, the unpaid vendor, in case of the vendee’s insolvency, may stop them in tran-situ; that is, ho may countermand tiie delivery and resume tiie possession of the goods before their arrival at tiie place of destination. And it appears to be considered that the term insolvency, when used with reference to this branch of the law, means a general inability to pay, evidenced by tiie stoppage of payment. (Abbott on Shipping, p. 511, n. a 5, Am. Edit.; Smith’s Mercantile Law, 501.)
Stoppage in transitu, as the terms import, can only take place while the goods are on their way; if they arrive at their place of ultimate destination, and come into tiie possession of the vendee, there is an end of the vendor's right over them. And, therefore, in most of tiie cases oil tills subject, the question lias been, whether the goods had or liad not arrived at the termination of their journey. “Tiie rule to be collected from all the cases, (it lias been “said,) is that they are in transitu no long- as they are in tiie bauds of tiie car- *7 “rieras sueh, whether lie was or was not appointed hy the consignee ; “and also so long as they remain in any place o£ deposit connected with their “ I rausmis: ion.” (Lickbarrow v. Mason, 1 Smith's reading Cases, 415, n.)
“ Good:-..- r ■. deemed to he in Lransiln, not. only -v lo they remain in the pos- -• ■■ -sion <-i i he carrier, whether hy wa. i or Ian >, -nd although such carrier may bav i> mu named and appointed hy.t he eon ' ;noo.; hut also when they in no/ place of deposit, connected i.i'h the : ’.insniissioh and delivery of “iheni. and until they arrive at theae'ual or eon ruetive. possession of the "c >usigu-‘ . at tlie place named hy the buyer, to i .a seller, as their destiua-•■rion.” (Abbott on Shipping, ojt), 511,) “The Intnsitus of tlie goods, and ‘•eons-'iju.";; !y tlie right of stoppage, is determined hy actual delivery to the “ vendee. í r hy circumstane.es which nr . equivale;,: to actual delivery. There “are. ea-es in which a constructive delivery will, and otir-rs in which it will “not, destroy th<; right. The delivery to a carrier or packer, to and for the “use of the Vendee, or to a wharfinger, is a constructive delivery to the ven-“doe; but it. is not sufficient to defeat this rigid, even though tlie carrier he “appoint ‘d hy the vendee. It will continue, until the place of delivery he, '“in fact, tlie end of tlie journey of the goods, and they have arrived to the " ion or under tlie direction of the vendee himself.” (d Kent Com.,
These are. the general principios which have been deduced hy eminent jurists and elementary writers on this branch of the law from adjudged cases. Questions on great nicely and difficulty frequently arise in their application. “In “many of the cases” (says Kent) “where the vendor’s right of stoppage in tl1mnin'tn lias been defeated, the delivery was constructive ouly; and there “has been much subtlety and reUnemeut on the question, as to facts and cir-“cuin.-t anees, which would amount to a delivery sufficient to take away the “right. The. point of inquiry is, whether the property is to be considered as “still in trausit; for if it had once fairly arrived at its destination, so as to give “the actual exercise of dominion and ownership over it, the right is “gone. The cases, in general, on the subject of constructive delivery, maybe “ reconciled hy the distinction that if a delivery to a carrier or agent of tlie ven-“dee he. for the purpose of conveyance to the vendee, the right of stoppage “ continues, notwithstanding such a constructivo delivery to tlie vendee; but if “the goods be delivered to a carrier or agent for safe custody, or for disposal “ on the. part of the vendee, arrd tlie. middle man is, hy tlie agreement, con- “ verted into a special agent for tlie buyer, tlie transit or passage of the goods “ terminales, and with it the right of stoppage.” (Id., 544, 545.)
The same rule is adopted as the test hy which to determine this question, hy Lord Tenderdeu in his Treatise on Shipping. (Abbott on Shipping, p. G25.) “In all these cases,” (of constructive delivery, he says,) “the question is, •“whether the warehouseman or wharfinger be the agent of the vendee to “receive the. goods, or liis agent to forward them. And tho transitiw is not “ determined^ unless possession be taken by tlie consignee as owner; lie may “receive tlie goods into tlie warehouse of his agent, for a limited purpose, as “for the benetit of the consignor to restore them to him, and. the intention “ with which lie so receives them is a question of fact.”
Applying tliis test to the present case, the conclusion, I think, must be that the transit of ihe goods was not determined, and that there was not such a delivery to the vendee as to prevent the vendors from exercising the right of stoppage in iranxitii. I have attentively examined tlie leading- cases on this point. Viied and relied on in the very elaborate and able argument of counsel for tlu* appellant, and they do not seem to me to warrant a different conclusion. These goods, with others, were consigned (o tho care of Fulton & Hensley, with im-'t ruct ions by tlie consignors, “ to use every dispatch in forwarding “the goods to their respective, destination.” They looked to tlie vendee, KTehoi «>.>.. to i).- reimbursed the freight and charges, and the letters addressed to him, in which they say the goods are still in tlieir warehouse, “sab- *8 “ject to his orders,” that they had formerly written to him advising him of tlieir arrival to hi3 address, “and asking instructions what furtlK r disposition “to make of them,” and adding that they will “hold on to the.goods ” until “ho orders them away,” were probably only intended to advise him of the arrival of his goods, that they would he, forwarded upon payment of the dues, and to quicken his diligence in making payment and taking' them away } thus carrying out the instructions o£ the consignors, to use every dispatch i.i forwarding them. They undoubtedly assumed the character of agents for the vendee; lint not by any new agreement which impressed on them a new character distinct from that of agents to forward the goods pursuant to the original contract. The evidence, it seems to me, does not. warrant the conclusion that they were not the agents of the vendee to forward the goods, hut his agents, inorelyfor safe custody and disposal by him. And this, as we have seen, is the test by which to ascertain whether the right of stoppage is determined. The distinction is thus stated in the Treatise on Shipping, from which I have-before quoted:
“A case of constructive possession by the vendee, of goods remaining in the' “ hands of the carrier, is where the carrier enters expressly, or by implication} “into a new agreement, distinct from the original contract for carriage, to “hold the goods for the consignee as his agent, iiot for tlio purpose of expedit- “ ing them’'to the placo of the original destination pursuant to that contract, “but in a new character, for the purpose of custody oil his account, and sub- “ jeet to some new or further order to be given by him.” (Abbott on Shipping, 624, 625.)
I apprehend that no new or further order in the sense of the text T have quoted, was, by any understanding of the parties, express or implied, to be given in this case. The case, I take it, was simply tiiis: Nicholson was in default in payment of freight and charges; and Fulton & Hensley did not choose to forward on the goods unless "upon payment, and his order; and hence they retained them. “If the goods, (it lias been held,) have, arrived “at the port of delivery, and are lodged in a public warehouse, for default, of “ payment of the duties, they are not deemed to have come to the possession “of the vendee, so as to deprive the consignor of his right.” (2 Kent Com., 546, n. g.) This is not that case; but it is not materially different in principle. If, by coutraet with the vendee, express or implied, the relation in which the defendants Fulton & Hensley stood before, as mere instruments in the conveyance of the goods to the appointed place of destination, was changed, and they became the agents of the vendee, for a new and different purpose, it was such a constructive possession on the part of the vendee as would determine the right of the consignors. And it has been held that such constructive possession may exist, even where the goods are in the hands of intermediate agents, not professedly acting for cither'party, if it appear that, in point of fact, they held them for the vendee, and that the transitas is. regarded by the vendor or his agents as at an end. The same rule, it is said, will prevail where the goods are still in custody of the carrier by whom they have been forwarded, if it distinctly appear that he has expressly, or by implication, agreed to hold them as agent for the vendees, and not on the, behalf of the vendors, for the purposes of the transitas. And this has been held sufficiently established by evidence, that it was the custom of the carriers employed, upon the arrival of the goods at a town near the residence of the purchaser, to store them for safe lceeping in their warehouse until he sent for and took them away in his carts, and that the goods, of which the stoppage was in question, were warehoused under these circumstances at the time it was effected. But these decisions appear to have rested on the ground that the lina! delivery contemplated by the parties had been effected, and that the goods had, in effect, come to the hands of the person by whom they had been purchased. (Lickbarrow v. Mason, 1 Sm. L. C. 388, 3 L. Library, Edit., and cases cited in notes.)
On the other hand, it is clearly settled, that though the goods, be de- *9 live red to an agent of the vendee, or to a person in his employ, and though placed on board his ship or in his warehouse, still, if this he done with the view of fo'-wanling- them to the vendee himself, and the direction in which they have been moving-, and are still to move, he the result of the original impulse ' impressed upon them at the beginning- of ihe. fraud!us, the power of the con-si ;.ior to resume them into his possession will continue. And all bailments made in pursuance of the original design of the vendor, where that has beeu to bring the goods more absolutely to tiio possession of the vendee, are, in fact,, as to the. completion of the transitus, bailments on the account, and to the agents of the vendor; and this, although made to persons in the employment of t he vendee. (Ib.)
The ease of Buckley v. Furniss, (15 Wend. B., 137,) is an illustration of this doctrine. A party residing at a distance from his correspondent ordered a quantity of merchandise, directing it to be forwarded to an intermediate place. The goods were accordingly font arded, and, after their arrival at the intermediate place, were, delivered to a common carrier employed by the purchaser; but before reaching his residence the possession of the goods was resumed by the vendor, on the ground of the. insolvency of the purchaser. And it was held that the goods, not having arrived at the place of their llnal destination, the transitus was not ended, and the vendor had a right to stop and detain them until their price was paid. The court adopted'the principle as stated by Bayley, J., in Coates v. Railton, (6 B. & C., 422,) as “the principle to be “deduced from the cases,” that “the transitus is not at an end until the goods “have reached the place named by the buyer to the seller as the place of their “destination.”
A new trial having been awarded by this opinion, the case came a second time before the. Supreme Court, and the same principle was again affirmed. (17 Wend. 11., 504.)
The conclusion to be drawn from the cases seems to bo that whether the final delivery has beeu effected which determines the right of stoppage in transitn, is to he decided according to the intention of the parties in each case, by examining whether they contemplated any further and more absolute reduction into possession on the part of the vendee. With what intention the goods were delivered to an agent of the vendee or any bailment of the goods-was made, is, of course, a,question of fact to be decided by the jury. (Ib.; Abbott on Shipping, G25.)
It is not necessary, to a valid stoppage in transitu, that the party by whom it is effected should have received a special authority to that effect. The authority of a general agent is sufficient. (Whitehead v. Anderson, 9 M. & W., 518.) Ami it has beeu held tha’l, where the circumstances are such as to give a legal right, a stranger may exercise it, provided a subsequent ratification be given. (Bell v. Moss, 5 Wharton, 189.) But in Whitehead v. Anderson, above cited, the latter point was doubled. The agency of Fulton & Hensley conferred on them by the assignors in this case was doubtless sufficient loan! horize them to act in behalf of the latter. We conclude, therefore, that the right of stoppage in transitu existed, and was rightly exercised as between the vendor and veudee, or that the evidence was such as to authorize the jury so-to find.
2. It remains to inquiie whether the right of the consignors was defeated by the assignment to (he plaintiff of the bill Of lading. A general assignment for the benefit of creditors, or a seizure by an execution creditor or under process of foreign attachment against the consignee, will not affect the right of the consignor. 'The fact of an assignment for the benefit of creditors is, of itself, liolice to the assignee of the insolvency of the consignee, and of the consequent liability of the goods to seizure by the consignor. (1 Smith, L. O. in notes to Lickbarrow v. Mason; 15 Wend. R., 137 ; 17 Id., 504; 8 Pick. R., 198.) Nor will a. sale for a valuable, consideration unaccompanied by a transfer of the bill, of lading, although quite sufficient to pass the property in the goods, affect the-power of the consignor to stop them in transitu, the absence of the bill of lading. *10 being considered as constructive notice that the consignee has not paid for the goods, and that the consignor has not waived his right of resuming his lien for the purchase money. (1 Smith L. O., before cited; 10 Pick. 11., 173; 2 Id., 399; 9 Mass. 11., 33 ; 0 Taunt.. It., 433.)
But, it is well settled, that the light to stop) in transitu may be defeated by the vendee, by negotiating the hill of lading, with a bona Jide indorsee. This was the turning point of the leading case of Lickbarrow t>. Mason, than which, says Kent, there is no ease on mercantile law which has afforded & greater display of acute investigation. And, lie adds, “it seems now to be “ considered as the law of Westminster Hall that if a bill of lading be assigned, “bona Jide, and for a valuable consideration, it is a transfer of the property; “ and in the case of the consignee, if it be made without notice of the insolv“ency of the consignee, the property is absolutely vested in the assignee of “the consignee, and. the consignor has in that ease lost his right to slop. It “is likewise considered to be ¿lie law in this country that ihe delivery of the “bill of lading transfers the property to the consignee ; and it seems to be “ conceded th.at the assignment of it by the consignee, by way of sale or mort- “ gage, will pass the property, though no actual delivery of the goods be made, “provided they were then at sea. The rule is founded on sound principles of “mercantile policy, and is necessary to render the consignee safe in the ae- “ ceptance of the drafts of his correspondent abroad, and to afford him the “means of prompt reimbursement or indemnity.” (2 Kent Com., 048, 049; Abbott on Shipping, 5 Am. Edit., 038 n.)
While, therefore, the goods remain unpaid for, and the transitas continues, the right of the vendor to stop them, upon the occurence of insolvency in the vendee, may be defeated by a bona fide sale, or mortgage of the goods for a valuable consideration, accompanied with a transfer of the bill of lading. All these requisities, however, must concur. (Ib.; l(i Pick. R., 473.) And it is not to be understood that in all cases a sale by the consignee accompanied by an assignment of the bill of lading, even for a valuable consideration, will defeat the right of the consignor to stop the goods.
“If the assignee of the bill of lading has notice of such circumstances as “ render the bill of lading- not fairly and honestly assignable, the right of stoppage, as against the assignee, is not gone; and any collusion or fraud be- “ tween the consignee and his assignee will of course enable the consignor “ to assert his right. But the mere fact that the assignee has notice that the “ consignor is not paid does not seem to be, of itself, absolutely sufficient to “render the assignment defeasible by the stoppage of the cargo in transit, if “ the case bo otherwise clear of all circumstances of fraud; though if the “ assignee be aware that the consignee is unable to pay, then the assignment “ will be deemed fraudulent as against the rights of the consignor.” ¿2 Kent Com., 530.)
“The validity of the assignment is not confined to those cases in which the “assignee has no notice that the goods have not been actually paid for in “money. If the assignee takes an assignment bona Jide, without notice of any “ such circumstances as would render the bill of lading not fairly and honestly “ assignable, lie acquires a good title against the consignor. Goods are seldom “ actually paid for in money, at the time of their shipment; in general, a bill “of exchange is drawn for tíle price; if a person, knowing that sueli is the “transaction, and that the bill of exchange has been accepted, takes an assignment of tlie bill of lading, fairly and'honestly, for a valuable considera- “ tion before the money becomes payable, without any reason to know or “apprehend that the consignee is likely to fail and not pay the money in due “course, the consignor cannot prevent the delivery of the goods. This has ■“been solemnly decided in the Court of King’s Bench. But, if a person assist “ in contravening the actual terms of the sale on the part of the consignor, or “ his reasonable expectations arising out of them, or his rights connected therc-•“with — if, for instance, ho knows that the consignee is'in insolvent circuin- / stances; that no bill has been accepted for the price, or that, being accepted, *11 “it is not likely to he paid, lie will stand in the same situation with the “consignee, and his interposition, under such circumstances, being- in fraud of “ this right, of tlio consignor, will not bo available to defeat it.” (Abbott on" Shipping, (MO.)
These references will suffice to show under what circumstances an assignment of the hill of lading, by way of sale or mortgage of the goods, will defeat the rigid; of stoppage 'in transitu. It will have been seen that it is not absolutely necessary to t lie validity of the assignment that the assignee should l)o ignorant that tlie good.; have not been paid'i'or. If lie takes tlio assignment bona fide, without a knowledge of any such circumstances as would render tlio bill of lading not fairly and honestly assignable, he acquires a good tilicas against the consignor. 'But if, on the other hand, he takes the assignment under such circumstances, or with notice of such facls, as afford him reasonable grounds of belief that the vendee could not fairly and honestly make to him the assignment, he, will bo in no better condition than his assignor. It will he no answer to the assertion of right by tlio consignor that the'assignee of his vendee did not actually intend tlie commission of a fraud; he must not have had reason to know or apprehend that the consignee will defraud the consignor of the price of the goods by making the assignment. Whether he had such knowledge is, of course, a question of fact.
In tile present case the evidence fully establishes tlio insolvency of Nicholson; audit cannot, I think, be doubted that it was quite sufficient to warrant the jury in drawing the conclusion that his inability to pay for the goods was known to Chandler at"the time of the assignment. Oil the facts in evidence, I see no reason to be dissatisfied with the verdict, and should be of opinion that the judgment ought to be affirmed, had iliore been no misdirection of the court by which tlie. jury may have iie.cn inlluoucedin their finding. But the first instruction given by the court plainly implies, not only Unit tlie assignment must have beep buna fide, but that the goods must also have reached their ultimate destination, ami that both must have concurred in order to defeat the right of stoppage in transitu. This would be, in effect, to deny that tlie vend- or’s rigid to resume the possession of the goods may he defeated by an assignment to a bona fide assignee before the goods have reached their place of destination. This probably was not what the court intended. But the form of the instruid ion was such as that tlie jury might well infer, and probably would infer, that, unless the trail situs was at an end the plaintiff, though an assignee in good faith and for a valuable consideration, could not recover. Had (.lie court elsewhere repelled such an inference by instructing the jury that the right of tlie vendors to resume tlie possession of tlio goods might be defeated before they readied their place of destination by negotiating tlie hill of lading with abouajida indorsee, it would have obviated tlio objection to tlie instruction in question. But no such instruction was given. In no oue of tlie. instructions were, the jury informed that such assignment and negotiation of tlie bill of hiding would defeat tlie vendor’s right. This idea is nowhere distinctly presented, that the. vendor’s right may be divested by such assignment before tlio trail sit us is ended. Tlie court, in the instruction in question, enumerated tlie ■circumstances which would defeat the right in such form and connection as to leave the inference fairly deduoible that, unless those circumstances all concurred, it would not be defeated. This, it is conceived, was error; and as it may have influenced the finding of tlie jury, it will require a reversal of the judgment. AVe cannot say that nut for tlie instruction the jury might not liavo found otherwise upon the questions of fact which it was their province to decide under tlio issues and evidence in the case.
It was objected that the plaintiff did not make a formal tender of dues when lie demanded the goods. This he was excused from doing by the peremptory refusal of the defendants to deliver them without an order to that effect from tlie consignors. After such refusal it is to be supposed that a tender would llave beeii wholly unavailing, and it was not necessary.
The authorities cited by counsel for tlie appellant, for the purpose of *12 showing- that the defendants, Fulton & Hensley, having- admitted the proprietorship of Nicholson, could not afterwards dispute it, are not applicable to a •cast1 like the present. Tlie property in tlie goods unquestionably was in Nicholson ; and the admission of that fact by the consignors or their agents could not affect tlie right of stoppage in iransitu. That right does not rest upon tlie ground of a rescission of the contract. Its exercise does not rescind the contract of sale, or divest the title of the vendee. It merely places the consignor in the position in which he was before the Iransitus began, and enables him to enforce the right of lien, which arises in every vendor on the non-payment of the purchase money, and continues until the goods come, with his consent, to-the actual possession of the vendee or his agents. It is a right bestowed upon tlie vendor in this case to prevent the injustice which would be done him if, in-consequence of the vendee’s insolvency while the price of the goods was yet unpaid, they were to be seized upon in satisfaction of his liabilities, and t-lius-the goods of one man were to be disposed of in payment of the debts of another. (2 Kent Com., 541, 542; Smith’s L. C., before cited; Abbott on Shipping.)
Tlie cases cited turned, not on the right of stoppage in transitu, but on the-effect of admissions made by one party in which others have confided, and on which they have acted, and which, consequently, are binding on tlie party making- them. The defendants were not precluded by any act or admission of theirs, in this cáse, from asserting- the consignor’s right.
There is another principle applicable to this case, to which, as the case will be remanded, it may be proper to advert. That is, that where the transfer of the bill of lading is by way of mortgage or pledge, as in this ease, the right to-stop the goods is not absolutely defeated, as it is in the case of a sale by the consignee: for, if the mortgage should be held, to have been mg.de bona'fide, the vendor may still resume his interest in them, subject to the rights of the mortgagee, and will have a right to the residue which may remain, after-satisfying the mortgagee’s claim. (1 Smith, L. 0., before cited.)
The judgment is reversed and the cause remanded for a new trial.
Reversed and remanded.