[No. 3181.]

## R. J. GOODE *v.* THE STATE.

1. UNLAWFUL SALE OF ESTRAY ANIMALS—CHARGE OF THE COURT.—IN-DICTMENT comprehended the two counts of selling the estray animals without having given legal notice of the sale, and of selling the same when three adult bidders besides the family of the taker up were not present. After the evidence was submitted the State abandoned the first count, and elected to proceed on the second, notwithstanding which the court charged, in effect, that if the jury believed the defendant sold the said animals without having given legal notice, they should convict. *Held,* that such question was no longer in issue, and the defendant promptly excepting, the charge was erroneous upon the elementary principle that the charge of the court should be confined to the issues to be tried.

2. SAME—PRACTICE.—The liability of the court to mislead the jury and prejudice the rights of the accused by extending the charge beyond the issues involved in the trial, is the reason of the rule. When, then, the defendant has excepted to such a charge, and doubt arises as to how far the defendant may have been prejudiced by it, the duty of reversing the judgment is imposed upon this court. To defeat the enforcement of this rule, it must manifestly appear that the charge, though wrong, did not influence the verdict of the jury.

3. SAME—CONSTRUCTION OF A TERM—CHARGE OF THE COURT.—To the law (Rev. Stats., Art. 4583) regulating the sale of certain estray animals is appended a proviso which, in effect, forbids the sale, even under legal notice, unless there be present at the sale at least three adult bidders besides the members of the family of the taker up. In the charge authorizing the jury to convict in the event they believed that three adult bidders besides the members of the defendant's family were not present at the sale, the court declined to instruct as to what constitutes a "family," but declared that question to be a matter of proof, and authorized the jury to construe the meaning of the term for themselves. *Held,* error; that the term, when applied to a particular state of facts, is a mixed question of law and fact; that it is the province of the court to declare the law, so far as the fact is governed by law, and so far as the fact is a

question of proof, it is to be deduced by the jury from the evidence, and not from their personal knowledge.

4. SAME.—In the construction of Article 4583, Revised Statutes, regarding the sale of certain estrays, the word "family" is *held* to mean the collective body of persons who live in one house, under one head or manager.

APPEAL from the County Court of Bell. Tried below before the Hon. W. M. Minyard, County Judge.

The indictment in this case was originally presented in the district court, but was transferred to the county court, as the court of proper jurisdiction. It charged the appellant with the violation of the estray laws, in two counts: 1. That he unlawfully sold certain estray animals, without having first given legal notice of such sale; and 2, that unlawfully he sold the said animals at a sale which was not attended by three adult bidders besides the members of his family. The trial resulted in the conviction of the appellant under the second count, the first having been abandoned by the State, and the punishment assessed by the jury was a fine of one hundred and fifty dollars.

The opinion sufficiently discloses the case.

No brief for the appellant has reached the Reporters.

*J. H. Burts,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. The appellant was convicted for unlawfully selling estray animals, without complying with the laws regulating estrays. (Penal Code, Arts. 770 and 771).

The charge in the indictment was that appellant did "unlawfully sell and dispose of said estray cattle without first having given legal notice of the said sale," * * * and "that he did unlawfully sell and dispose of said estray cattle, at which said sale were then and there less than three adult bidders present besides the family of the said R. J. Goode, the taker up," etc. After the evidence and before the argument, the county attorney abandoned the count in the indictment charging the defendant with selling without giving legal notice, and left the case to rest solely upon the charge that the sale was made when there were less than three adult bidders, besides the members of appellant's family, present.

Notwithstanding the charge was thus narrowed to the single issue, the court, in his instructions to the jury, after giving them

in charge Article 4583, Revised Statutes, instructed them "that if they believed from the evidence that the defendant sold the stock mentioned in the indictment without giving the notice required by law, they would find him guilty." Defendant saved his bill of exceptions to this charge, and presents it as error. There is no doubt that the charge was erroneous, if for no other reason, solely upon the ground that it submitted an issue which was no longer in the case, and the rule is elementary that the charge should be confined to the issues to be tried. (*Markham* v. *Carothers*, 47 Texas, 22.) The judge in his charge shall distinctly set forth the law applicable to the case (Code Crim. Proc., Art. 677), and whenever he goes outside the case to hunt up and instruct the jury upon matters not involved in the case, he is not only liable to mislead the jury, but to prejudice the rights of the defendant. How far the defendant has been prejudiced in this instance we are unable to say. Evidently the court disregarded a plain rule of practice, and defendant promptly saved his exception by bill at the time. (Code Crim. Proc., Art. 685.) Under such circumstances, in cases of doubt as to how far a defendant has been injured by such error, it would seem to be our duty to reverse the case under the provision of the statute just cited. Where the charge is wrong it must appear manifest that the verdict was not influenced by it, or the verdict will be set aside. (White & Willson's Con. Rep., sec. 1127, citing *Chandler* v. *Fulton*, 10 Texas, 2; 1 Cal., 352.)

Full provision is made by statute for the sale of estray animals. (Rev. Stats., Arts. 4570, *et seq.*) Amongst other things it is provided that "any citizen taking up any stray hogs, sheep, goats or cattle other than work oxen, shall proceed in the same manner as is required in the case of horses, etc., except advertising in a newspaper; and any person estraying the same, at the expiration of six months from the day of appraisement, shall proceed to give notice as in the case of sheriffs' or constables' sales, and sell such estrays where they were taken up; *provided,* there be not less than three adult bidders in attendance at such sale beside the family of tne taker up." (Rev. Stats., Art. 4583.)

At the sale made by defendant in this case, McBurnet, a witness for the State, says: "There was present at the sale, besides R. J. Goode, the defendant, his sons, F. F. Goode, R. J. Goode, and myself. I married defendant's sister. Both of his sons bid on the cattle, and I bought them in for seventy-one dollars. I

was not bidding for myself, but for defendant, and bought the cattle for the defendant. I paid the defendant's money for the cattle. Both of the sons of the defendant, F. F. Goode and R. J. Goode, are grown, and live to themselves. * * * Neither of the sons lived on the place with the defendant, and they each made his own living. One of the sons is married and the other is not. The unmarried son is the younger, and has been working and trading for himself for over two years. He is about twenty-three years old."

It became a question, in view of this evidence, whether or not there were present at said sale "three adult bidders" beside the family of the taker up. Defendant's special requested instructions upon this point were as follows:

"1. The family consists of those who live together in the same house, subsisting in common, directing their attention to a common object, the promotion of their mutual interest and social happiness.

"2. If you believe from the evidence that there were three adult bidders present (at said sale) besides the family, as the family is above defined, or if you have a reasonable doubt of this (fact), you will acquit the defendant."

These instructions were refused, and the charge given by the court on this point was as follows: "Gentlemen of the jury, if you believe from the evidence that there were less than three adult bidders in attendance at the sale, at the time defendant sold the cattle mentioned in the indictment, beside the family of defendant, you will find him guilty, etc. I will not give you any charge as to what constitutes a man's family. You can just put your own construction on that. It is a matter of proof." A bill of exceptions is also saved by the defendant to this charge of the court.

The charge was erroneous. What is intended in the statute by the words "the family of the taker up," is, when applied to a particular state of facts, a mixed question of law and fact. So far as the fact is governed by law, it belongs to the judge to declare the law, and so far as the fact was one of proof, it was a matter to be ascertained from the evidence, and one not to be left to the personal knowledge of the jury. (*Green* v. *Hill*, 2 Texas, 465.)

What is a "family" in contemplation of the statute? Mr. Webster defines the word "family" to mean "the collective body of persons who live in one house or under one head or manager

or household." Mr. Bouvier defines it to be "all the individuals who live under the authority of another, including the servants of the family."

Our Supreme Court has, in several instances, had occasion to discuss the meaning of the word as used in reference to homestead and other exemptions. In *Wilson* v. *Cochran*, 31 Texas, 677, it is said: "It was most certainly used (in the Constitution) in its generic sense, embracing a household composed of parents and children or other relatives, or domestics or servants; in short, every collective body of persons living together within the same curtilage, subsisting in common, directing their attention to a common object — the promotion of their mutual interests and social happiness. * * * It is, besides, the most popular acceptation of the word." But it is said in *Whitehead* v. *Nicholson:* "The mere temporary and indefinite union of persons in one household, directing their attention to a common object—the promotion of their mutual interests and social happiness—does not constitute a family within the meaning of the Constitution." In *Howard* v. *Marshal* it is held that the Constitution "had in view a family composed of husband, wife and children" (48 Texas, 478), and this same doctrine is reaffirmed in *Roco* v. *Green*, 50 Texas, 483, wherein it is further said: "We think that the law contemplated—as a general rule at least—that as the older members of the family grew up and married, or moved off and left the paternal roof, the legal relation of a family as it had formerly existed ceased, and that other and new relations and families would spring up."

In the construction of the statute regulating the sale of estrays (Rev. Stats., Art. 4583) we are of opinion the word "family" would mean the collective body of persons who live in one house under one head or manager. (52 Iowa, 431; 53 Id., 706; s. c., 36 Am. Rep., 248 and note.)

Because the court erred in its charge to the jury in the matters discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered June 7, 1884.