Opinion by
White, P. J.
§ 784. Certiorari; sufficient petition for; case stated. Albert Mau & Co., of San Francisco, Cal., shipped a bill of goods on the order of, and on ninety days’ time, to J. E. Laurence, at El Paso, Tex. On the 27th day of March, 1884, the goods arrived at El Paso, and the railroad freight agent called the attention of Laurence to the fact, and he said that he was not prepared to take them out, and asked the agent to keep them in store for him. The goods remained in the warehouse of the railroad company until April 2, when they were levied upon under a writ of attachment issued in a suit brought by appellants against said Laurence. In order to get possession of the goods so as to levy their attachment thereon, appellants paid the freight charges upon the same, and after the levy had the goods removed to their store-house for safe keeping. On the same day of the levy, one O. H. Laurence, a brother and clerk of J. E. Laurence, telegraphed *689 to Mau & Co. as follows: “Goods arrived directed to J. E. Laurence, subject to your order, as he is out of business.” On the same day Mau & Co. replied to C. H. Laurence, instructing him to deliver the goods to Kettezen & Degetan in El Paso, and they also wired said firm to receive the goods for them. Having also learned by some means, not disclosed, that appellants had already attached the goods, Mau & Co. telegraphed them that the attached goods Were the property of Mau & Co. in transitu. Appellants refused to deliver the goods, and their attachment suit coming on for trial on April 11, 1885, was dismissed, when they immediately instituted another suit, obtained another writ of attachment, and had it levied upon the goods which were still in their possession. Mau & Co. filed claimant’s oath and bond for trial of. right of property to the goods. On May 30, this second attachment suit, and also the trial of the light of property suit, were tried in the justice’s court where the proceedings were instituted, and judgment was rendered in favor of appellants against appellees and the sureties on their claim bond for $190, interest and cost, and that the goods were liable for the debt. Mau & Co. appealed to the county court. Their appeal was dismissed, and they then removed the cause to the county court by certiorari. A motion to dismiss the certiorari was overruled, and upon a trial of the case, Mau & Co. recovered judgment for the value of the goods, $190, less the freight charges, $42, which had been paid by appellants, and for all costs. Held; The motion to dismiss the certiorari because of insufficiency of the petition was properly overruled. The petition, after stating the issues made up for trial in the justice’s court, states with sufficient fullness and certainty the evidence which was adduced, though it does not set out in hcec verba the written instruments in evidence, nor in totidem verbis the testimony of each witness examined at the trial. Such particularity and exactness is not requisite to the sufficiency of a petition for certiorari. A petition which gives the sum and substance *690 fully of the facts proven on the trial is sufficient in this respect. . In the petition before us there is this allegation: “And there was no other evidence before the court upon the trial of said cause.” This allegation clearly imports that the petition purports to, and does, set out all the evidence adduced on the trial.
§ 785. Same; freight charges; goods cannot be attached without payment of; officer paying is entitled to carrier's lien. It is claimed by appellants that the court erred in overruling the motion to dismiss the certiorari, because-the petition does not show that Mau & Oo. became entitled to the goods, because they had not paid or offered to pay appellants the freight charges on said goods, and were therefore not entitled to possession thereof. The rule is well established that goods upon which freight is due cannot be attached without paying the freight, and that if an officer pay the freight, in order to get the goods in his possession, be stands, in respect to the lien for the freight, in the place and has the rights of the carrier. [Drake on Attach. (5th ed.) 245.]
§ 786. Same; payment or tender of freight charges by claimant of goods attached not required, when; right of stoppage in transitu sup)erior to lien for freight charges. Under the facts shown in the petition, we do not think the tender, or an allegation of tender, of the freight charges, paid by appellants, was a condition-precedent to the exercise of the right of stoppage in transitu by appellees, so far as appellants and the officer are-concerned, because it is alleged that on the day the goods were attached, appellees telegraphed appellants as follows: “Fourteen packages you attached in hands of railroad, being in transitu, our property; will you hold them on our account, or must we replevin? Answer.” This telegram was received by appellants. They did not reply to it, nor did they demand of appellees the payment of the freight charges on the goods. It is not shown that appellees even knew the amount of such freight, charges. The telegram was a demand for the goods, and *691 certainly imported that appellees would pay the freight charges if appellants would hold the goods for appellees, and may, we think, be considered equivalent to an offer to do so. We are further of opinion that the failure of appellants to reply to appellees’ telegram was tantamount to a refusal to accept the freight charges and release the goods, and that appellees were not afterwards bound to renew the tender, when compelled to take legal steps to regain the property. • A similar question was raised in Chandler v. Fulton, 10 Tex. 2, and, under facts presenting in principle the point as here presented, it is said: “After such refusal, it is to be supposed that a tender would have been wholly unavailing; and it was not necessary.” Besides, the judgment as rendered fully protects appellants as to the freight charges paid out by them. The carrier even could not have defeated appellees’ right of stoppage in transitu, by demanding a prepayment of freight charges before allowing appellees to-take steps to enforce such right. The unpaid vendor’s right of stoppage is held to be higher in its nature than a carrier’s lien for a general balance. [Oppenheimer v. Russell, 3 Bos. & P. 42.]
§ 787. Stoppage in transitu; lato in relation to. It is claimed by appellants that the judgment is not supported by, and is contrary to, the evidence, because: 1. The evidence shows that the transit of the goods had ended before appellees made any effort to stop in transitu. 2. Because the evidence does not show that the vendee or consignee was, at the time of the attempted stoppage, insolvent. With regard to the second proposition, the rule is, that “the right to stop in transitu can only be exercised against an insolvent or bankrupt buyer, or quasi buyer. But the object in allowing the privilege to the vendor being his protection against the insolvency of the vendee, such privilege, unless waived by the vendor, ought properly to extend to cases of insolvency, whether existing at the time of sale, or occurring at any time before the actual delivery of the goods.” [O’Brien v. *692 Norris, 16 Md. 122; Reynolds v. R. R. Co. 43 N. H. 580; Blum v. Marks, 21 La. Ann. 268; Benedict v. Schaettles, 12 Ohio St. 515; o Wait’s Act. & Def. 613.] By the word “insolvency” “is meant a general inability to pay one’s debts, and if this fact exists, no matter how proved, if sufficiently and satisfactorily proved, the law requires no more.” [5 Wait’s Act. & Def. 614.] The insolvency of J. E. Laurence is, we think, fully established by the evidence; and it is also shown that appellants knew of such insolvency, and that this knowledge on their part was the inducing cause for their attachment, and its levy upon the goods in controversy. They knew of Laurence’s inability to pay his debts; hence their attachment of these goods and payment of the freight thereon, for the purpose of defeating appellants’ right of stoppage, or to make a debt which could not otherwise be made, the debtor being insolvent. In such case the rule is: “If a person assist in contravening the actual terms of the sale on the part of the consignor, or his reasonable expectations arising out of them, or his rights connected therewith; if, for instance, he knows that the assignee is in insolvent circumstances; that no bill has been accepted for the price, or that, being accepted, it is not likely to be paid, he will stand in the same situation with the consignee, and his interposition under such circumstances, being in fraud of this right of the consignor, will not be available to defeat it.” [Chandler v. Fulton, 10 Tex. 2; citing Abbott on Shipping, 640.] But, were the goods in transitu when the attachment was levied, or had the transitus ceased and determined? That there had been no actual delivery of them by the carrier to the consignee can scarcely be questioned. Did he have such constructive possession as that the law would hold that the goods were his? The distinction with regard to actual and constructive possession is thus stated in Chandler v. Fulton, supra: “A case of constructive possession by the vendee of goods remaining in the hands of the carrier is where the carrier enters expressly, or by implication, into a new *693 agreement, distinct from the original contract for carriage, to hold the goods for the consignee as his agent, not for the purpose of expediting them to the place of the original destination, pursuant to that contract, but in a new character, for the purpose of custody on his account, and subject to some new or further order to be given by him.” But it has been held: ‘ ‘ If the goods have arrived at the port of delivery, and are lodged in a public warehouse for default of payment of the duties, they are not deemed to have come to the possession of the vendee, so as to deprive the consignor of his right.” [2 Kent Com. 516, N. G.] It is said to be the rule that the trcmsitus is at an end, where the goods are still in the custody of the carrier by whom they have been forwarded, if it distinctly appear that he has expressly, or by implication, agreed to hold them as agent for the vendee, and not on behalf of the vendor, for the purpose of the trcmsitus. And this has been held sufficiently established by evidence that it was the custom of cairriers employed, upon the arrival of the goods at a town near the residence of the purchaser, to store them for safe keeping in their warehouse until he sent for and took them away in his carts, and that the goods, of which the stoppage was in question, were warehoused under these circumstances at the time it was effected.
But these decisions appear to have rested on the ground that the final delivery contemplated by the parties had been effected, and that the goods had, in effect, come to the hands of the person by whom they had been purchased. . . . “The conclusion to be drawn from the cases seems to be,” says Judge Wheeler, “that whether the final delivery has been effected, which determines .the right of stoppage in transitu,, is to be decided according to the intention of the parties in each case, by examining whether they contemplated any further and more absolute reduction into possession on the part of the vendee. With what intention the goods were delivered to *694 an agent of the vendee, or any bailment of the goods was made, is, of course, a question of fact, to be decided by the jury.” [Chandler v. Eulton, supra.] “ Goods are liable to stoppage as long as they remain in the possession of the carrier as such.” [James v. Griffin, 2 M. & W. 633.] And after their arrival at the place of destination, and while in the hands of the carrier, or wharfinger, or warehouseman, for the mere purpose of delivery to the vendee, the vendor may resume the possession. [Northey v. Field, 2 Esp. 613; Bird v. Brown, 4 Exch. 786; Harris v. Pratt, 17 N. Y. 249; Crawshay v. Eades, 1 B. & C. 181.]. And it is said to be doubtful whether an act of marking, or taking samples, or the like, without any removal from the possession of the carrier, though done with the intention to take possession, would amount to a constructive possession, so as to defeat the vendor’s right to stop in transitu, unless accompanied by such circumstances as to denote that it was intended that the carrier keep the goods in the nature of an agent for custody. [Whitehead v. Anderson, 9 1. & W. 518.] Nor is the right of stoppage divested, though the goods be levied on by execution or attachment at the suit of a general creditor of the vendee, provided the right be exercised before the transitus is at an end. The vendor’s lien has preference; it is the elder lien and cannot be superseded by execution or attachment. [Hause v. Judson, 4 Dana (Ky.), 11; O’Brien v. Norris, 16 Md. 122; Naylor v. Dennie, 8 Pick. 199; Callahan v. Babcock, 21 Ohio St. 281; Morris v. Shryrock, 50 Miss. 590; Inslee v. Lane, 57 N. H. 454; 5 Wait’s Act. & Def. 616.] Until the transitus is at an end, and there has been a delivery, either actual or constructive, made to the vendee, the carrier of the goods, and all middle-men into whose custody they pass, in furtherance of and by virtue of the consignment, are, by implication of law, the agents of the vendor, and not of the vendee. The transit is terminated, and the vendor’s right of stoppage is extinguished, *695 only when possession of the goods is voluntarily and actually transferred to the vendee, or to Ms agent. Wherefore, until the vendee in person, or his agent, under and for him, shall become custodian in possession, neither the transit of the goods nor the vendor’s right of stoppage will be held to have terminated. [Callahan v. Babcock, 21 Ohio St. 281; S. C. 8 Am. Rep. 63.] The question then is, was the carrier, at the time, of the levy of the attachment in this case, holding the goods as the agent of the vendor, or the vendee? Until delivery of the possession to the vendee, either actual or constructive, he was, as we have seen, the agent of the vendor. Was there any positive, affiirmative contract, arrangement or understanding'between him and the vendee, which would change his original relations, and make him the agent of the latter? The agent’s testimony is as follows: “ J. E. Laurence came to the depot and inquired about the goods in question. I told him the goods were in our warehouse. He said, ‘ I am not prepared to pay freight now, and do not need the goods at present; hold them for me for a few days.’ I replied, ‘ all right.’ ” We do not think that this was such an agreement as was binding upon the agent, to the extent that it would change entirely his relation to the vendors. Nor do we think that it so changed the possession of the goods from the agent of the vendors to the agent of the vendee, as to operate a divestiture of the former’s right of stoppage in transitu. The words “all right,” used by the agent, do not necessarily imply an acceptance of an agency different from the one he was occupying at the time to the vendors. And the language of the vendee, “ that he did not need the goods at present; hold them for me a few days,” does not necessarily imply that he intended to take possession of or exercise acts of ownership over them at that time; on the contrary, to our minds, it clearly imports that he did not wish to take possession and control of them then, but wished to leave them as they were, in the hands of the carrier. We are of opinion that the court did not "err *696 in holding that the goods were in transitu and liable to the claim of stoppage of appellees, and in rendering judgment accordingly.
June 24, 1885.
Affirmed.